By the Court, Jones, J.
The only point made by the appellant’s counsel, on this appeal, is that the court erred in not dismissing the complaint upon the grounds urged at the trial. These grounds, although apparently six in number, are in reality but three, and are, that the evidence shows:
1st. That the plaintiff did not bring back and fill in the earth, as required by the contract.
2d. That he did not preserve the well. *256 3d. That he did not manufacture the stone, ready for the masons.
With reference to the first ground, the evidence of the defendant’s architect is: “He (the plaintiff1) did fill it in on the top and side except with this ground which I thought necessary to cover the whole building in, but which was lying ahead and he could not get at it.” The ground here referred to is 525 yards of earth which the plaintiff had excavated and which, as he claims, he had placed on adjoining property at the direction of the defendant for his (the defendant’s) convenience, and which, when he went to remove this earth, the owner of those lots would not allow him to remove, when he endeavored to do so ; whereupon he offered the defendant to furnish 350 yards of other earth and allow seventy-five cents a yard for the balance, being the value thereof, which offer was rejected. Upon this claim there was contradictory proof.
If this claim furnishes an excuse for the non-performance of the contract in this particular, it called for a submission to the jury. I think it does furnish an excuse. The contract does not require the plaintiff to furnish earth of his own wherewith to fill in, but simply to replace and fill in with the earth which should be excavated from the defendant’s premises. If, then, the defendant by his own act prevented the plaintiff from using this earth for filling in, he, to that extent, absolved him from the performance of the contract, and the most he would be entitled to would be a reduction from the contract price, .of the value of the labor in replacing and filling in that amount of earth. The non-suit, so far as moved for on this ground, was properly refused.
The second ground is almost too trivial to notice. The well in question was situate within the .area to be excavated. In the course of the excavation some earth fell into it. This did not destroy the well. All that was necessary to do was to clean it out. The defendant swears it would cost $100 to clean it out; while the plaintiff swears the *257 cost would be but $5. Thus stands the evidence. It was proper to submit the question to the jury, for if the expense would be but $5, the plaintiff is not to be deprived of all compensation for his labor by reason of a non-performance in this respect.
The third ground is one of more difficulty. If the word “manufactured,” as used in the contract, means “ dressed ” there has clearly not been a substantial performance of the contract, and the plaintiff cannot recover, unless the deviation from the contract was by consent of the defendant. If, on the other hand, the word “ manufactured ” means simply that the stones were to be broken into such sizes and shapes, and sledged to such a degree of smoothness as to be ready tó be dressed by the masons, then there is sufficient evidence to call for a submission to the jury of the question of fact as to the performance of the contract in this respect.
There is no proof as to the meaning of the word “ manufactured,” except such as can be gathered from the acts of the parties and the attendant circumstances. The phrase “ manufactured ready for the masons,” by itself, conveys no meaning to my mind. What is he to do ? Is he to cut them into squares, or oblongs, or hexagons ? Is he, with a stone chisel and mallet, to smooth the stones equal to the face of those composing the front of an elegant mansion; if so, how many sides is he to dress smooth ? It may have a technical meaning; but if so, it is to be regretted that none of the witnesses have informed us what it is.
It is suggested that the word is equivalent to “ dressed.” I see no reason for adopting the suggestion. On the contrary, there are some circumstances which indicate that it was used to designate something different from dressing. Dressing is a' term well understood by all masons and architects. The contract in question was prepared by an architect; if he had designed that the stones should be dressed by the .plaintiff he would surely have used the tech- *258 meal word so well understood, and not have substituted for it some other expression.
The architect was a witness on the trial, and when asked “Did the plaintiff-manufacture the stones ready to put in the walls ?” he says, “ He blasted the stones, but he did not dress them for the walls; he merely broke them out and laid them there.” If he understood by the term “ manufacturing stones for a wall,” dressing them, why should he be so guarded and non-committal in his answer, leaving it in uncertainty whether what the plaintiff did do was manufacturing or not; especially when to a previous question if “ Mr. Tone did not dress them,” he answered promptly and directly, “Ho sir.”
The masons who were sworn on behalf of the defendant, are equally ambiguous and non-committal, on this súbject. The witness Wiesnér, when asked “were they manufactured so that you could use them?” replied, “We were put in a great deal of bother with them ; ” and being further asked “ What did you have to do with them, before using them?” he said, “We had to make them smaller, and dress them.”
The witness Dresser (a mason) being asked whether the stones, when put in his hands, were in a suitable condition, and if not, why not ? answers, “ Some of them were too heavy, and he did not manufacture them the right way.” Being further asked “ In what respect were the stones not properly prepared?” he answers, “He must work them so that a man can handle them and put them in the wall.”
Michael Dunn, a witness for the plaintiff, gives some testimony which satisfactorily solves the problem. The question was put to him. “ They say here it was not properly dressed and they had to have it properly dressed?” He answers : “I understood we were to do nothing but sledge the stone in a proper way for the masons to dress and to put it in the wall.”
Taking the testimony of these' three witnesses together, it is apparent to me that there are two operations to be per *259 formed on a stone before it is ready to be placed in a wall. First, the stone is to be sledged into a proper size and to a suitable degree of smoothness to prepare it to be dressed by masons with the appropriate implements, and second, it has to be dressed by the masons, with their tools. The first of these operations may be termed “ manufacturing,” using that word simply in the sense of “preparing.” This, I have no doubt, is the meaning of the word, as used in the contract in question. The testimony of the plaintiff that for thirty years he had been engaged in blasting out and furnishing stone for building, and that he always pursued the same course as in this case, taken in connection with the absence of any reason for pursuing a different course in this case, tends strongly to confirm my view of the meaning of the word “manufacture” in this contract.
I am aware that the plaintiff swears “ I did not manufacture these stones; I blasted them.” This is clearly an error. The burthen of the testimony shows that he did more than simply blast, viz. that he had them sledged, so as to properly prepare them for the masons. The plaintiff then, being under no obligation to dress the stones, his failure to do so does not affect his right of recovery.
On the question whether he properly sledged the stones, so as to prepare them to be dressed by the masons, there was conflicting testimony, and therefore that question was properly left to the jury.
I have not overlooked the fact, that the plaintiff says that the stones were not fit to turn the arch with; but he also says that it was no fault of his ; that he prepared the stone as well as it could possibly be done ; and that the fault was in the material itself. As the defendant furnished the material, he alone- must bear the consequence of its being defective.
Judgment affirmed, with costs.