## ANTONE THOMAS vs. JOHN P. KNOWLES, 2d.

Bristol.   Oct. 30. — Nov. 3, 1879.   COLT & AMES, JJ., absent.

A written agreement recited that A. had bought of B. a fractional part of a vessel, with the understanding that B. was "to take her back at the end of the voyage" at a certain rate; and that A. agreed that B. should "have her at that rate." In an action for breach of this agreement, by A. against B., it appeared that, after the vessel had ended that voyage and started on another, A. tendered a bill of sale of his share in the vessel to the defendant, but the vessel had then become a wreck, and had been abandoned and sunk in the ocean. *Held*, that the action could not be maintained.

CONTRACT for breach of the following agreement, signed by the plaintiff and the defendant: "New Bedford, June 9, 1876. This is to certify that I have this day bought of John P. Knowles 2d $\frac{3}{32}$ of the bark Sarah at the rate of five thousand dollars, as she was discharged from her late voyage, with the understanding that he, the said John P. Knowles 2d is to take her back at the end of the voyage at the rate of thirty-two hundred dollars, and I, the said Antone Thomas, the present purchaser, agree that the said Knowles shall have her at that rate." Writ dated January 9, 1879, returnable to the Superior Court. The answer admitted the making of the contract declared on; and alleged an offer to perform on the part of the defendant, and a refusal to perform on the part of the plaintiff.

The case was referred to an auditor, who found the following facts:

The defendant was agent and part owner of the bark Sarah, a vessel employed and fitted for the whaling business from the port of New Bedford. In the course of the business, she arrived home from a whaling voyage on May 3, 1876, and, after discharging her cargo, and being repaired and refitted, she sailed upon another whaling voyage on June 20, 1876. From this voyage she arrived home on September 3, 1878, was discharged, again repaired and refitted, and sailed upon another whaling voyage on October 12, 1878, in the forenoon. She was capsized in a severe gale at sea on that night, and all hands lost except three men who clung to the wreck until October 15, when they were rescued by a pilot-boat. As to her subsequent fate, it was

agreed by the parties that the last seen of the bark was by the crew of the pilot-boat on the 15th, and the bark was then capsized, and full of water, and abandoned, and nothing has been since heard from her, although when last seen she was afloat on the surface of the ocean.

While the vessel was in port, on June 16, 1876, the defendant sold and duly conveyed by a bill of sale, properly recorded, three thirty-seconds of the bark to the plaintiff. At the time of the sale, the parties duly executed the agreement for reconveyance declared on. While the bark was refitting for her last voyage, the plaintiff, who was engaged in the business of outfitting and furnishing seamen for the whaling business, endeavored to ship some men on this bark; but the defendant refused to receive the men, saying to the plaintiff, "You owned in her the last voyage; but you have nothing to do with her now." On another similar occasion he said to the plaintiff, "I never had an outfitter for owner before, and I never will again." Soon after these conversations, and about a week before the vessel sailed, the defendant read the contract declared on to the plaintiff, and asked him if he was going to give him, the defendant, a bill of sale; he told the plaintiff the money was ready for him; that the vessel was nearly ready for sea, and if the plaintiff did not give up the bill of sale, the vessel would be cleared with the plaintiff as an owner. The plaintiff said he did not think he should give the bill of sale for the amount named in the contract. The day before the bark sailed, the plaintiff caused a bill of sale in due form, and acknowledged, to be prepared, in which the consideration was stated to be $300. Taking this bill of sale with him, he twice during the day endeavored to find the defendant, but did not see him. He then gave the bill of sale to an attorney, who, acting under instructions from the plaintiff, went on the same day with the bill of sale to the defendant, and said to him, "I am authorized by Mr. Thomas to deliver you this bill of sale upon your payment to me of $450." The defendant said, "I have a written agreement with Mr. Thomas to sell his interest for $300. I am willing to carry out my agreement, and shall make him carry out his contract." The attorney replied, "Thomas claims that he is not bound by that agreement, as, at the time of making it, the vessel was

represented to be sound, whereas she was not; and much money had to be expended in repairs; and also the outfits for the voyage were much larger than it was represented they would be; so that the whole enterprise had cost $19,000 or thereabouts, instead of $12,000, as he, Thomas, had been led to believe it would be. And so Thomas claims he should have $450 for his interest in the vessel." To this the defendant said, "The contract was executed after the condition of the vessel was fully known, and the price of the repurchase was governed by that fact; I shall compel Thomas to carry out his agreement." No money or check was offered to the attorney by the defendant. The attorney reported this interview to the plaintiff, and handed him back the bill of sale. On October 14, after the bark had sailed, there was a rumor to the effect that the bark had put into Newport disabled. The defendant, while trying to ascertain the source of the rumor, met the plaintiff, and said to him, "Will you give me a bill of sale of the Sarah, or do you decline to do it?" The plaintiff replied, "I don't say whether I will or not." There were no further conversations on the subject of the bill of sale between the parties. On January 8, 1879, the bill of sale above referred to was duly tendered by the plaintiff's attorney to the defendant, who refused it.

The auditor found that the vessel was not afloat, but was sunk in the ocean, on January 8, 1879; and found for the defendant.

The parties then agreed to accept the auditor's report as an agree statement of facts. The Superior Court ordered judgment for the defendant; and the plaintiff appealed to this court.

*G. Marston*, for the plaintiff.

*C. W. Clifford*, for the defendant, was not called upon.

GRAY, C. J. The stipulation, in the contract of sale of the vessel from the defendant to the plaintiff, that the defendant should, at the end of the voyage, "take her back" and "have her" at a certain price, clearly contemplated that the plaintiff, when the voyage was ended, should deliver or tender a bill of sale of the vessel to the defendant. It being agreed that, at the time when the plaintiff tendered a bill of sale, the vessel had become a wreck, abandoned and sunk in the ocean, the plaintiff

fails to show that she existed at that time in the character of a ship, as the contract required, and therefore cannot main· tain this action. *Barr* v. *Gibson*, 3 M. & W. 390, 400. *Wells* v. *Calnan*, 107 Mass. 514. *Judgment affirmed.*