JOHN F. DOLAN, as Surviving Partner, etc., Respondent, *v.*
JOHN C. RODGERS, Appellant.

1. CONTRACT — IMPLIED CONDITION AS TO CONTINGENT IMPOSSI-
BILITY OF PERFORMANCE — RECOVERY FOR PART PERFORMANCE.  When,
under an implied condition of a contract for work, the parties are to be
excused from performance if a certain event happens, and by reason of
the happening of the event it becomes impossible to fully perform the
contract, there may be a *pro rata* recovery for part performance by the
one party, at least when what has been done is of benefit to the other.

2. SUB-CONTRACT SUBJECT TO IMPLIED CONDITION OF STOPPAGE OF
WORK BY REASON OF NON-CONSENT OF GRANTOR OF PRIMARY CONTRACT
— RECOVERY FOR PART PERFORMANCE BY SUB-CONTRACTOR FROM CON-
TRACTOR.  If a contractor under a railway construction contract, which
states that contractors will not be allowed to sub-contract any part of the
work without consent of the railway company, sub-lets a part of the
work to a third party at a stipulated rate, without the consent of the com-
pany, both parties having knowledge of the provision of the contract and
that no consent had been given, a condition is, by implication of law,
attached to the sub-contract, to the effect that if the company should
interfere the sub-contractor shall be excused from further performance
and the contractor from all liability accruing after that date; and if the
sub-contractor proceeds with the work until prevented by the company
by virtue of the provision in its contract, and such part performance is
rendered of value to the contractor by his receiving compensation from
the company therefor at a rate greater than that he had promised to pay
the sub-contractor, the latter may recover from the contractor payment
for the work done, at the rate fixed by their contract.

  *Dolan* v. *Rogers*, 79 Hun, 610, affirmed.

(Argued April 29, 1896; decided May 26, 1896.)

APPEAL from judgment of the General Term of the
Supreme Court in the fifth judicial department, entered upon
an order made June 20, 1894, which affirmed a judgment in
favor of plaintiff entered upon the report of a referee.

  This was an action to recover a balance alleged to be due for
work, labor and services performed by the plaintiff and his
deceased co-partner for the defendant between June 1 and
November 1, 1890.

62

The answer contains a general denial in part and pleads a breach of contract both as a defense and counterclaim.

The facts, so far as material, are stated in the opinion.

*Frank A. Dudley* for appellant. The referee erred in his first conclusion of law that the plaintiff and his partner had a valid and legal excuse for their failure to complete the work agreed to be done by the contract. (*B. Nat. Bank* v. *Mayor, etc.*, 63 N. Y. 336; *Harris* v. *Rathburn*, 2 Abb. Ct. App. Dec. 326; *Glacius* v. *Black*, 50 N. Y. 145; *Knowlton* v. *C. & E. S. Co.*, 57 N. Y. 535.)

*Backenstose & Keyes* for respondent. The referee having found all of the material questions of fact arising upon conflicting evidence, in favor of the plaintiff, and the General Term having approved of his findings, this court will not review the same. (Code Civ. Proc. §§ 1337, 1338; *Meacham* v. *N. Y. S. M. B. A.*, 120 N. Y. 237; *In re Ross*, 87 N. Y. 514; *Vermilyea* v. *Palmer*, 52 N. Y. 471.)

VANN, J. The referee found, upon evidence placing the facts beyond review in this court, that on the nineteenth of May, 1890, the defendant and a corporation known as the Buffalo & Geneva Railway Company entered into a written agreement whereby the former agreed to build ten sections of a railroad then in process of construction by the latter. The contract contained the following clause: "*Sub-contracts.—* Contractors shall be required to give their personal attention and supervision to the work, and will not be allowed to sub-contract the whole or any part of same without consent of the railway company having been given in writing thereto."

In June, 1890, the plaintiff's firm agreed verbally with the defendant to construct four of said sections at a stipulated price per cubic yard or other measure of quantity, and at the time both parties knew of said clause in the contract with the railroad company and that no consent to sub-let had been given. The plaintiff's firm completed sections seven and eight, but did nothing upon sections nine and ten, because

they were prevented by the railroad company by virtue of said clause in its contract with the defendant. The value of the work done at this time, at the rate of compensation fixed by the parties, was the sum of $4,135.14, of which the defendant paid to the plaintiff, prior to the stoppage of work, $2,650, and, after that, the further sum of $300. The defendant claims that the plaintiff should not recover the balance alleged to be due, but should pay damages for not completing the work, because the contract, although entire, was not performed, except in part, while the plaintiff claims that there was a valid excuse for non-performance of the part not done, because both parties contracted with reference to the possibility of interference by the railroad company.

Impossibility of performance is, in general, no answer to an action for damages for non-performance of a contract, provided the contingency was such as the promissor should have foreseen and provided against when he made the promise, nor will it permit a recovery for part performance of an entire contract. (3 Addison on Contracts, 1196, 8th ed.; 2 Parsons on Contracts, 672, 8th ed.) If, however, the impossibility arises, even indirectly, from the acts of the promisee, as, for instance, where one of the contracting parties so conducts himself as to subject the other to an action by some third person, if he duly performs the contract, it is a sufficient excuse for non-performance. (*United States* v. *Peck*, 102 U. S. 64; *Gallagher* v. *Nichols*, 60 N. Y. 438; *European, etc., Mail Co.* v. *Royal Mail Steam Packet Co.*, 30 L. J. C. P. 247; 3 Addison on Contracts, 1194; Story on Contracts, sec. 976.) This is upon the principle that he who prevents a thing from being done may not avail himself of the non-performance, which he has, himself, occasioned, for the law says to him, in effect: "This is your own act, and, therefore, you are not damnified." (*West* v. *Blakeway*, 2 M. & Gr. 751.)

In this case the defendant, by his contract with the railroad company, had given it the power to treat any sub-contractor, who entered upon its premises to build the road, as a trespasser, and to prosecute him accordingly. It is insisted that

the defendant thus, indirectly, stopped the work, himself, and created the impossibility that he now, in effect, invokes as an excuse for refusing further payment, although he has been paid by the company for all that was done by the plaintiff. This may be true, but we prefer to base our affirmance of the judgment upon another ground. We think that as both parties had in view the contingency that performance might not be permitted by the railroad company, it was an implied part of their contract that if such were the result, both were to be released as to the future, but bound as to the past. Thus, where a contract provided that the defendant was to give to the plaintiff the use of a music hall upon a certain day, but before the day arrived the hall was destroyed by fire, it was said : " There seems no doubt that where there is a positive contract to do a thing, not in itself unlawful, the contractor must perform it or pay damages for not doing it, although, in consequence of unforeseen accidents, the performance of his contract has become unexpectedly burdensome or even impossible.  *  *  *  But this rule is only applicable when the contract is positive and absolute, and not subject to any condition, either express or implied ; and there are authorities which, as we think, establish the principle that where, from the nature of the contract, it appears that the parties must from the beginning have known that it could not be fulfilled unless, when the time for the fulfillment of the contract arrived, some particular specified thing continued to exist, so that when entering into the contract they must have contemplated such continued existence as the foundation of what was to be done, there, in the absence of any express or implied warranty that the thing shall exist, the contract is not to be construed as a positive contract, but as subject to an implied condition that the parties shall be excused in case, before breach, performance becomes impossible from the perishing of the thing, without default of the contractor." (*Taylor* v. *Caldwell*, 32 L. J. Q. B. 164.) That case was made the basis of a judgment rendered by this court in an action involving the sale and delivery of

specified articles of personal property, under such circumstances that the title did not vest in the vendee, and it was held that, as the property was destroyed by an accident, without the fault of the vendor, so that delivery became impossible, the latter was not liable to the vendee in damages for the non-delivery, because the law implied a condition that the property should continue to exist. (*Dexter* v. *Norton*, 47 N. Y. 62.) So contracts for personal services requiring skill, which can only be performed by the person named, are held not of absolute obligation, under all circumstances, but subject to the implied condition that the person designated shall be able to perform at the time specified. (*Spalding* v. *Rosa*, 71 N. Y. 40.) Judge ALLEN, in delivering the opinion of the court in the case last cited, said : "Both parties must be supposed to contemplate the continuance of the ability of the person whose skilled services are the subject of the contract, as one of the conditions of the contract." (Id. p. 44.) Where a person guaranteed the payment of dividends by a corporation at a fixed rate for seven years, and before the expiration of that period the corporation was dissolved on the application of the attorney-general, it was held that the parties contracted upon the assumption of corporate existence during the time covered by the guaranty, and that the dissolution, by taking away for the future the whole consideration upon which the guaranty was based, relieved the guarantor from liability thereon. The chief judge, speaking for the court, after referring to the cases above cited, said that they were "not exceptions to the rule that contracts voluntarily made are to be enforced, but the courts, in accordance with the manifest intention, construe the contract as subject to an implied condition that the person or thing shall be in existence when the time for performance arrives. So, if after a contract is made, the law interferes and makes subsequent performance impossible, the party is held to be excused." (*Lorillard* v. *Clyde*, 142 N. Y. 456, 462.)

There are many cases holding that the continued existence of the means of performance, or of the subject-matter to

which the contract relates, is an implied condition, and the rule seems to rest on the presumption that the parties necessarily intended an exception, and, as said in *Dexter* v. *Norton (supra)*, it operates "to carry out the intention of the parties under most circumstances, and is more just than the contrary rule." (P. 66.) (*Tone* v. *Doelger*, 6 Rob. 251, 256; *Walker* v. *Tucker*, 70 Ill. 527; *Thomas* v. *Knowles*, 128 Mass. 22; *Field* v. *Brackett*, 56 Me. 121; *Scully* v. *Kirkpatrick*, 79 Pa. St. 324, 332; *Shear* v. *Wright*, 60 Mich. 159; *Howell* v. *Coupland*, L. R. [1 Q. B. D.] 258; *Robinson* v. *Davison*, 40 L. J. Ex. 172; *Appleby* v. *Myers*, 36 L. J. C. P. 331, 336.)

The effect of the rule is to excuse both parties from further performance of the contract without giving to either the right to recover damages for the part not performed. (Id.) In England the rule seems to go no farther in its effect than to relieve both parties from any obligation under an entire contract, with reference either to the future or the past. In this country, however, there may be a *pro rata* recovery for part performance by the one party, at least where what has been done is of benefit to the other. (*Jones* v. *Judd*, 4 N. Y. 412; *Cleary* v. *Sohier*, 120 Mass. 210; *Butterfield* v. *Byron*, 153 Mass. 517; *Cook* v. *McCabe*, 53 Wis. 250, 258; *Schwartz* v. *Saunders*, 46 Ill. 18; *Hollis* v. *Chapman*, 36 Tex. 1; *Niblo* v. *Binsse*, 1 Keyes, 476.)

In *Butterfield* v. *Byron (supra)* the court said: "The principle seems to be that when, under an implied condition of the contract, the parties are to be excused from performance if a certain event happens, and by reason of the happening of the event it becomes impossible to do that which was contemplated by the contract, there is an implied assumpsit for what has properly been done by either of them."

Upon applying the principles established by these authorities to the case in hand, all difficulties vanish. By implication of law a condition was attached to the contract between the parties to the effect that if the railroad company should interfere, the plaintiff should be excused from further performance and the defendant from all liability accruing after that date.

As, however, part performance was of value to the defendant, for he received compensation for it from the railroad company at a rate materially greater than the price he had agreed to pay the plaintiff, the law will not permit him to retain that advantage without paying for it. Whether an implied assumpsit springs from the benefits received, or the contract is regarded as severed by the happening of the contingency and as operative until then, but inoperative afterward, or a failure to completely perform is, under the circumstances, a failure of the entire consideration, leaving each party to recover for what he has done upon an implied request, is not settled by the authorities.

As they unite in holding that the contract furnishes the measure of recovery, they apparently regard it as still operative to some extent. The theory that the contract is in force *pro tanto* is the simplest and seems to be the nearest approach to the apparent intention of the parties, but it is unnecessary to decide this question, as upon any theory the defendant is liable and the judgment should, therefore, be affirmed, with costs.

All concur, except Haight, J., not sitting.

Judgment affirmed.