CONSUMERS' ICE CO. OF BUFFALO v. E. WEBSTER, SON & CO.

(Supreme Court, Appellate Division, Fourth Department.   January 6, 1903.)

1. CONTRACTS—EXECUTION—DATE—QUESTION FOR JURY.

Where, in an action for breach of contract, plaintiff claimed that the contract was signed on July 3, 1896, as it purported to be, and at an hour of the day earlier than proceedings for the incorporation of plaintiff were completed, while defendant claimed that the draft of the contract submitted on July 3d was unsatisfactory, and that the contract was changed, and not in fact signed until the 7th, but the date was left unchanged, the question as to whether the contract was in fact executed before plaintiff's organization as a corporation was for the jury.

2. SAME—MEETING OF MINDS.

A partnership had been engaged in the ice business under the name of C. Ice Co.; and defendants, who were ice dealers in the same city, and who were acquainted with the amount of ice used by such firm in its business, contracted to supply the firm with such ice as it should need for its retail trade while it had no ice on track in the city.   At the time such contract was made, the partnership was in process of incorporation; and the corporation, when formed, merged the business of several other ice dealers in the city, whereupon plaintiff corporation demanded that defendant furnish ice to the corporation sufficient to supply its wants, including the trade of such other dealers.   The evidence as to whether plaintiff knew of the incorporation when the contract was made was conflicting, and there was no evidence that defendant contemplated or agreed to furnish ice for the dealers whose business was so merged.   Held, that there was no meeting of minds between the parties, and that the contract was void.

3. SAME—PREVENTION OF PERFORMANCE—EFFECT.

Where defendant contracted to furnish ice for the retail trade of a firm while it had no ice on track in the city, and the conduct of such firm in merging the business of itself and others into a corporation, and demanding that defendant supply ice sufficient for the entire wants of the corporation, rendered it impossible for defendant to determine the amount of ice, if any, required for the trade of the firm, plaintiff was not entitled to recover for breach of contract on defendant's refusal to perform.

Appeal from trial term, Erie county.

Action by the Consumers' Ice Company of Buffalo against E. Webster, Son & Co.   From a verdict in favor of defendant, and from an order denying plaintiff's motion for a new trial on the minutes, plaintiff appeals.   Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

Frank M. Williams, for appellant.
August Becker, for respondent.

McLENNAN, J.   The contract which is the subject of dispute is in the words and figures following, to wit:

"For and in consideration of the sum of one ($1.00) dollar to us, the undersigned, E. Webster, Son & Company, a corporation created and existing under and by virtue of the laws of the state of New York, and doing business in the city of Buffalo, N. Y., in hand paid by the Consumers' Ice Company of Buffalo, the receipt of which is hereby acknowledged, we do hereby agree

---

¶ 3. See Contracts, vol. 11, Cent. Dig. §§ 1430, 1431.

to and with said Consumers' Ice Company to furnish and deliver to them, at the price of one dollar and twenty ($1.20) per ton, a sufficient quantity of ice as the said Consumers' Ice Co. may demand and require for its retail trade in the city of Buffalo, up to the first day of March, 1897. The delivery of such ice to be made by us at our Alabama street station in said city. It being understood that this agreement is intended by us to furnish the said Consumers' Ice Company a sufficient quantity of ice for their retail trade only when said Consumers' Ice Co. has no ice on track in the city of Buffalo; and it is further agreed that strict and prompt fulfillment of the foregoing agreements are of the essence of this contract. Witness the signature of the treasurer of the said E. Webster, Son & Company, and its corporate seal hereto affixed, this 3d day of July, 1896.

"[Corporate Seal.]

"E. Webster, Son & Company,
Per E. H. Webster."

The plaintiff was incorporated on the 3d day of July, 1896, under the corporate name of the Consumers' Ice Company of Buffalo, and engaged in conducting a wholesale and retail ice business in that city. The defendant was also, at all the times mentioned, engaged in the same business. The contract in question was negotiated by Mr. John Wollenberg, who was president of the plaintiff, on its behalf, and Mr. E. H. Webster, treasurer of the defendant, acting for it. For some time prior to the execution of the contract, John Wollenberg and N. Preston Taft, as copartners, had conducted a wholesale and retail ice business in the city of Buffalo under the firm name and style of the Consumers' Ice Company of Buffalo, being precisely the same name as that adopted by the plaintiff corporation. As such copartners, and prior to the execution of the contract, they had been furnishing ice, as a part of their wholesale trade, to one Neumann, to Harley & Randall, and to one Staley, all of whom were ice dealers in the city of Buffalo. The defendant was acquainted with the retail trade of Wollenberg & Taft, knew its extent, and also knew the character and extent of the trade and business of the other dealers referred to. When the plaintiff corporation was formed, Neumann, Harley & Randall, and Staley were taken into it, the business of those concerns becoming the business of the plaintiff corporation; and the plaintiff immediately demanded that the defendant furnish ice under the contract to supply its retail trade, which included not only the trade of Wollenberg & Taft, under the copartnership name and style of the Consumers' Ice Company, but also the retail business of Neumann, Harley & Randall, and Staley. The defendant refused to supply ice to the plaintiff, or to perform the terms of the contract executed by it, upon the ground, among others, that the contract was in fact made with Wollenberg & Taft, doing business under the firm name and style of the Consumers' Ice Company, to supply their retail trade when they had no ice upon track; that it never entered into contract with the plaintiff corporation; and further that, if the agreement was with the plaintiff, the subject of the contract was the retail trade of Wollenberg & Taft, and in no manner included the trade of Neumann, Harley & Randall, and Staley.

Upon a former trial of this case, a judgment was recovered by the plaintiff, and upon appeal to this court was reversed. It then appeared the defendant offered to prove that, during the negotiations which resulted in the contract, it was expressly stated by the plaintiff's presi-

dent that the contract was for the benefit of the old firm of Wollen-. berg & Taft, which evidence was excluded, and an exception duly taken.    The ruling was held to constitute reversible error.    The court said (32 App. Div. 592, 53 N. Y. Supp. 56):

"In case a party to an executory contract for the future sale and delivery of property is led to believe, by the person who negotiates the contract in behalf of the vendee, that he is acting for a particular firm, and it turns out that he was contracting for a corporation engaged in the same business, under the same name, the existence of which corporation was unknown to the vendor, he may repudiate the contract on discovering that the vendee is a corporation, instead of the firm with which he understood he was contracting.    One who enters into an executory contract for the future sale and delivery of property has the absolute right to know with whom he is contracting.    In case the jury should find that the existence of the plaintiff corporation was unknown to the officers of the defendant, and that they were led to believe that they were contracting with the firm having the same name of the plaintiff corporation, the minds of the parties never met, and there was no contract; and if, as the defendant offered to prove, it was represented by the person negotiating the contract for the plaintiff that he was making it for the firm, it was a misrepresentation, and there was no contract, and, in case ice had been delivered under it without knowledge of the facts, title to the ice would not have passed to the plaintiff.    Ice Co. v. Potter, 123 Mass. 28, 25 Am. Rep. 9;  Arkansas Val. Smelting Co. v. Belden Min. Co., 127 U. S. 379, 387, 8 Sup. Ct. 1308, 32 L. Ed. 246;  Winchester v. Howard, 97 Mass. 303, 93 Am. Dec. 93;  Hardman v. Booth, 1 Hurl. & C. 803;  Cundy v. Lindsay, 3 App. Cas. 459;  Iron Co. v. Elliott, 34 N. J. Law, 184;  1 Pars. Cont. (8th Ed.) 581;  Leake, Cont. 32 et seq.:  1 Benj. Sales (2d Eng. Ed.) 167 et seq.;  Pol. Cont. (4th Eng. Ed.) 420 et seq."

So far as applicable to the facts now before us, the rule thus laid down must be regarded as the law of this case.    Upon this appeal, however, Wollenberg testified that when he negotiated the contract in question he informed the defendant that the plaintiff was a corporation, and that the business of himself and partner had become incorporated; in short, that he informed the defendant of the corporate. character of the plaintiff, the vendee named in the contract.    That testimony was contradicted by the treasurer of the defendant, and by two or three other witnesses, each of whom testified that when the contract was negotiated no reference was made to a corporation, or that the Consumers' Ice Company was any other than the copartnership composed of Wollenberg & Taft.    While we think the evidence very decidedly preponderates in favor of the defendant's contention, when taken together, it is of such a character as to present a question of fact for the jury.    The evidence shows that at the time when the contract bears date the plaintiff was not in fact incorporated, or at least that its incorporation had not been completed;  the certificate not having been filed in the office of the clerk of Erie county until 4:33 in the afternoon of the 3d day of July, and the contract in question was executed at an earlier hour of the day on which it was executed. Mr. Wollenberg, plaintiff's president, testified that the contract was not, in fact, executed and delivered until the 7th day of July, four days after it bears date;  that a contract dated on the 3d day of July had been prepared on that day, but that it was not satisfactory;  that some changes were necessary, and, when made, the contract was signed and delivered by the defendant, which was not until the 7th, leaving the date, as originally inserted, unchanged.    This statement of fact was

also contradicted by· Mr. Webster and other witnesses called by the
defendant, each of whom testified positively that the contract was pre-
pared, executed, and delivered upon the 3d day of July, 1896,—the
day it bears date.   Upon this question the evidence is also conflicting,
and therefore an issue of fact was raised for the determination of a
jury.

The only remaining question to be considered is whether or not
there is any evidence which tends to show that in the execution of the
contract the minds of the parties met in respect to the subject-matter
thereof.   A verdict having been directed for the defendant, we must
assume, in discussing this question, that the contract was made on the
7th day of July, 1896, after the incorporation of the plaintiff had been
fully completed; that the defendant knew of such incorporation, and
knew that it was contracting with the plaintiff as such.   It is essential
to the validity of a contract that the minds of the parties to it should
meet in respect to the nature and extent of the obligations assumed by
them.   The correct rule was pointedly stated by Blackburn, J., in
Smith v. Hughes, L. R. 6 Q. B. 597, as follows:

"If one of the parties intends to make a contract on one set of terms, and
the other intends to make a contract on another set of terms, or, as it is
sometimes expressed, if the parties are not ad idem, there is no contract, un-
less the circumstances are such as to ·preclude one of the parties from deny-
ing that he has agreed to the terms of the other."

Gillett v. Bank, 160 N. Y. 549, 55 N. E. 292; Bank v. Thompson,
121 N. Y. 280, 24 N. E. 473.

Upon the decision of the former appeal in this case, the court said,
per Follett, J.:

"In this case the contract was to furnish sufficient ice to supply the cus-
tomers of the vendee, which supposed vendee had been in business in the city
of Buffalo for several years, and the vendor must be supposed to have con-
tracted with reference to ·the extent of the vendee's business."

The evidence conclusively establishes—and it is uncontradicted—
that the defendant intended when it entered into the contract in ques-
tion only to obligate itself to supply ice for the retail trade of Wollen-
berg & Taft, even assuming that it knew they were then incorporated,
and that Wollenberg, plaintiff's president, who negotiated the contract
on its behalf, intended the defendant should understand that was the
extent of its obligation.   Wollenberg testified, "I wanted Webster to
understand, when I told him that we were incorporated, that 'we'
was Wollenberg & Taft."   His evidence also shows that he concealed
from the defendant the identity of the persons interested in the corpo-
ration, although asked for such information by Mr. Webster.   It is
true, Wollenberg testified that he informed Mr. Webster that they
were going to buy out Neumann, Harley & Randall, and Staley, and
he stated: "I told him [Webster] that we were going to buy them
out before Webster offered to make the contract."   This was contra-
dicted by Webster, but it is not important, if true, because, prior to
making the contract in question, Wollenberg & Taft were delivering
ice to the parties named ˙as a part of their wholesale trade, and it was
conceded that such sale and delivery of ice was not included in the
contract.   The trouble is that, immediately after the contract was

made, the plaintiff insisted that the defendant should supply ice for the retail trade of practically five ice dealers, rather than of one. From a careful examination of the evidence, which in many respects is confusing, we have been unable to discover a single fact which would justify the conclusion that the defendant intended, under the contract, to supply any ice other than that required for the retail business of Wollenberg & Taft as formerly conducted, or as it might be increased in the ordinary course of trade, or which indicates that Wollenberg did not know and fully understand that was the extent of the obligation which the defendant intended to assume. The testimony of Wollenberg bearing upon most of the issues involved was inconsistent and contradictory, and in conflict with much of his evidence given upon the former trial, yet we think it must be held that no evidence was given by him which tended to show that the minds of the parties to the contract in any sense met upon the proposition that the defendant was to supply ice for the retail trade of Wollenberg & Taft, Neumann, Harley & Randall, and Staley, although the business of each of such concerns was included in the business of the plaintiff corporation at the time the agreement in question was executed. Not only is the correctness of this conclusion established by the testimony of the witnesses, but all the circumstances point to the same result. A fair interpretation of the contract is that ice was to be furnished for the plaintiff only in case of exigency, when the transportation companies had failed to deliver ice as required,—as stated in the contract, "when no ice was on track." It appears without contradiction that under such circumstances it was customary for ice dealers in the city of Buffalo to accommodate each other, and it is evident that the purpose of the contract in question, so far as the defendant was concerned, was to accommodate the plaintiff in that regard. The price, $1.20 per ton, to be paid for the ice, was substantially its cost. On the same day the contract in question was made, Wollenberg sold ice which he had contracted to the Citizens' Ice Company for $1.40 per ton, to be taken by the vendee from the cars of the Grand Trunk Railway. The retail trade of Wollenberg & Taft, as was known by the defendant, only amounted to about one-fourth of the retail trade of the combined companies. Wollenberg, according to his own version of the transaction, stated to the defendant that only the business of Wollenberg & Taft was incorporated. Instead, the business of four other dealers was at that time, under arrangement previously made, included and taken over by the plaintiff corporation; and immediately upon the execution of the contract the retail wagons of these five concerns appeared at the place of business of the defendant, demanding that ice be delivered to them. It is apparent from the evidence that it was the purpose of Wollenberg, by means of plaintiff's incorporation and of the contract in question, and through misrepresentation, to procure ice to be delivered largely in excess of the amount which the defendant expected would be necessary under the contract, and largely in excess of the amount which Wollenberg intended the defendant should understand it was obligated to deliver, and we think there is no evidence upon which a different finding could be predicated. The demand of the plaintiff for ice which was required

for the retail trade not only of Wollenberg & Taft, but also of Neumann, Harley & Randall, and Staley, was not a demand within the terms of the contract, and the defendant was justified in refusing to comply therewith. The plaintiff had willfully interfered with and obstructed the performance of the contract on the part of the defendant, by mixing and consolidating the retail trade of the five different ice dealers with its business, and therefore the defendant was justified in refusing to perform the conditions of the contract. By reason of plaintiff's conduct, it was practically impossible for the defendant to determine what amount of ice, if any, was required for the retail trade of Wollenberg & Taft, because of the fact that they had no "ice on track."

In Taylor v. Risley, 28 Hun, 144, the court said:

"The law will not permit a party who has become entitled to the performance of an agreement by another so to intervene as to prevent such performance being made, and then, on the basis of such failure, to claim damages against the party prevented, because of his omission to perform his agreement."

Dolan v. Rogers, 149 N. Y. 491, 44 N. E. 167.

Entertaining the views above indicated, it is unnecessary to discuss the other questions raised by the respondent upon this appeal. The conclusion is reached that the judgment and order appealed from should be affirmed, with costs.

Judgment and order affirmed, with costs. All concur, except SPRING, J., not voting.