THE CONSUMERS ICE COMPANY OF BUFFALO, Appellant, *v.* E. WEBSTER, SON & COMPANY, Respondent.

*Agreement to furnish ice for the retail trade of a corporation — it does not extend to a retail trade not at the time intended, and which the vendee knew was not intended, by the vendor.*

A corporation engaged in selling ice at wholesale and retail entered into an agreement to sell to another corporation a sufficient quantity of ice at a stipulated price to supply its "retail trade." The vendee corporation had acquired the business of a firm bearing the same name as that under which it was incorporated and also the business of a number of other ice dealers. The vendor corporation supposed that its obligation under the contract would be limited to furnishing ice for the retail business formerly owned by the firm referred to, and it was the intention of the person who conducted the negotiations on behalf of the vendee corporation to convey this impression.

*Held,* that the vendor corporation was justified in refusing to supply ice for the retail trade of all the ice dealers whose business had been acquired by the vendee corporation.

APPEAL by the plaintiff, The Consumers Ice Company of Buffalo, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Erie on the 15th day of June, 1901, upon the verdict of a jury rendered by direction of the court dismissing the complaint, and also from an order entered in said clerk's office on the 13th day of July, 1901, denying the plaintiff's motion for a new trial made upon the minutes.

The action was commenced on the 26th day of September, 1896, to recover damages for the breach of a written contract, made and entered into by and between the parties to this action.

*Frank F. Williams*, for the appellant.

*August Becker*, for the respondent.

McLENNAN, J.:

The contract which is the subject of dispute is in the words and figures following, to wit:

"For and in consideration of the sum of one ($1.00) dollar to us, the undersigned, E. Webster, Son & Company, a corporation created and existing under and by virtue of the laws of the State of New York, and doing business in the city of Buffalo, N. Y., in hand paid by the Consumers Ice Company of Buffalo, the receipt of which is hereby acknowledged, we do hereby agree to and with said Consumers Ice Company to furnish and deliver to them, at the price of one dollar and twenty ($1.20) per ton, a sufficient quantity of ice as the said Consumers Ice Co. may demand and require for its retail trade in the city of Buffalo, up to the first day of March, 1897. The delivery of such ice to be made by us at our Alabama street station in said city.

"It being understood that this agreement is intended by us to furnish the said Consumers Ice Company a sufficient quantity of ice for their retail trade only when said Consumers Ice Co. has no ice on track in the city of Buffalo; and it is further agreed that strict and prompt fulfillment of the foregoing agreements are of the essence of this contract.

"Witness the signature of the treasurer of the said E. Webster, Son & Company, and its corporate seal hereunto affixed this 3d day of July, 1896.

"E. WEBSTER, SON & COMPANY,

" [Corporate Seal.]                              Per E. H. WEBSTER."

The plaintiff was incorporated on the 3d day of July, 1896, under the corporate name of the " Consumers Ice Company of Buffalo," and engaged in conducting a wholesale and retail ice business in that city. The defendant was also, at all the times mentioned, engaged in the same business. The contract in question was negotiated by Mr. John Wollenberg, who was president of the plaintiff, on its behalf, and Mr. E. H. Webster, treasurer of the defendant, acting for it. For some time prior to the execution of the contract John Wollenberg and N. Preston Taft, as copartners, had conducted a wholesale and retail ice business in the city of Buffalo, under the firm name and style of " Consumers Ice Company of Buffalo," being precisely the same name as that adopted by the plaintiff corporation. As such copartners, and prior to the execution of the contract, they had been furnishing ice, as a part of their wholesale trade, to one Neumann, to Harley & Randall, and to one Staley, all of whom were ice dealers in the city of Buffalo. The defendant was acquainted with the retail trade of Wollenberg & Taft; knew its extent, and also knew the character and extent of the trade and business of the other dealers referred to. When the plaintiff corporation was formed, Neumann, Harley & Randall and Staley were taken into it, the business of those concerns becoming the business of the plaintiff corporation, and the plaintiff immediately demanded that the defendant furnish ice under the contract to supply its retail trade, which included not only the trade of Wollenberg & Taft under the copartnership name and style of the Consumers Ice Company, but also the retail business of Neumann, Harley & Randall and Staley. The defendant refused to supply ice to the plaintiff or to perform the terms of the contract executed by it, upon the ground, among others, that the contract was, in fact, made with Wollenberg & Taft, doing business under the firm name and style of Consumers Ice Company, to supply their retail trade when they had no ice upon track ; that it never entered into contract with the plaintiff corporation ; and further, that if the agreement was with the plaintiff, the subject of the contract was the retail trade of Wollenberg & Taft, and in no manner included the trade of Neumann, Harley & Randall and Staley.

Upon a former trial of this case a judgment was recovered by the plaintiff, and upon appeal to this court was reversed. It then

appeared that the defendant offered to prove that during the negotiations which resulted in the contract it was expressly stated by the plaintiff's president that the contract was for the benefit of the old firm of Wollenberg & Taft, which evidence was excluded and an exception duly taken.   The ruling was held to constitute reversible error.   The court said (32 App. Div. 592): " In case a party to an executory contract for the future sale and delivery of property is led to believe by the person who negotiates the contract in behalf of the vendee that he is acting for a particular firm and it turns out that he was contracting for a corporation engaged in the same business under the same name, the existence of which corporation was unknown to the vendor, he may repudiate the contract on discovering that the vendee is a corporation instead of the firm with which he understood he was contracting.   One who enters into an executory contract for the future sale and delivery of property has the absolute right to know with whom he is contracting.

" In case the jury should find that the existence of the plaintiff corporation was unknown to the officers of the defendant, and that they were led to believe they were contracting with the firm having the same name of the plaintiff corporation, the minds of the parties never met, and there was no contract; and if, as the defendant offered to prove, it was represented by the person negotiating the contract for the plaintiff that he was making it for the firm, it was a misrepresentation and there was no contract, and in case ice had been delivered under it without knowledge of the facts, title to the ice would not have passed to the plaintiff.   (*Boston Ice Co.* v. *Potter*, 123 Mass. 28 ; *Arkansas Valley Smelting Co.* v. *Belden Mining Co.*, 127 U. S. 379, 387 ; *Winchester* v. *Howard*, 97 Mass. 303 ; *Hardman* v. *Booth*, 1 H. & C. 803 ; *Cundy* v. *Lindsay*, 3 App. Cas. 459 ; *Randolph Iron Co.* v. *Elliott*, 34 N. J. 184 ; * 1 Leake Cont. 32 *et seq. ;* 1 Benj. Sales [Corbin's ed.] 78 *et seq. ;* Blackb. Sales [2d Eng. ed.], 167 *et seq. ;* Pollock Cont. [4th Eng. ed.] 420 *et seq.*) "

So far as applicable to the facts now before us the rule thus laid down must be regarded as the law of this case.   Upon this appeal, however, Wollenberg testified that when he negotiated the contract

---

* 34 N. J. L. 184.

in question he informed the defendant that the plaintiff was a corporation; that the business of himself and partner had become incorporated; in short, that he informed the defendant of the corporate character of the plaintiff, the vendee named in the contract. That testimony was contradicted by the treasurer of the defendant, and by two or three other witnesses, each of whom testified that when the contract was negotiated no reference was made to a corporation, or that the Consumers Ice Company was any other than the copartnership composed of Wollenberg & Taft.

While we think the evidence very decidedly preponderates in favor of the defendant's contention, when taken together it is of such a character as to present a question of fact for the jury.

The evidence shows that at the time when the contract bears date the plaintiff was not in fact incorporated, or at least that its incorporation had not been completed, the certificate not having been filed in the office of the clerk of Erie county until four-thirty-three in the afternoon of the third day of July, and the contract in question was executed at an earlier hour of the day on which it was executed. Mr. Wollenberg, plaintiff's president, testified that the contract was not, in fact, executed and delivered until the seventh day of July, four days after it bears date; that a contract dated on the third day of July had been prepared on that day, but that it was not satisfactory; that some changes were necessary, and when made the contract was signed and delivered by the defendant, which was not until the seventh, leaving the date as originally inserted unchanged. This statement of fact was also contradicted by Mr. Webster and other witnesses called by the defendant, each of whom testified positively that the contract was prepared, executed and delivered upon the 3d day of July, 1896, the day it bears date. Upon this question the evidence is also conflicting, and, therefore, an issue of fact was raised for the determination of a jury.

The only remaining question to be considered is whether or not there is any evidence which tends to show that in the execution of the contract the minds of the parties met in respect to the subject-matter thereof. A verdict having been directed for the defendant, we must assume, in discussing this question, that the contract was made on the 7th day of July, 1896, after the incorporation of the

plaintiff had been fully completed; that the defendant knew of such incorporation, and knew that it was contracting with the plaintiff as such. It is essential to the validity of a contract that the minds of the parties to it should meet in respect to the nature and extent of the obligations assumed by them. The correct rule was pointedly stated by BLACKBURN, J., in *Smith* v. *Hughes* (L. R. 6 Q. B. 607) as follows: "If one of the parties intends to make a contract on one set of terms, and the other intends to make a contract on another set of terms, or, as it is sometimes expressed, if the parties are not *ad idem*, there is no contract, unless the circumstances are such as to preclude one of the parties from denying that he has agreed to the terms of the other." (*Gillet* v. *Bank of America*, 160 N. Y. 549; *Bank of Buffalo* v. *Thompson*, 121 id. 280.)

Upon the decision of the former appeal in this case, the court said, per FOLLETT, J.: "In this case the contract was to furnish sufficient ice to supply the customers of the vendee, which supposed vendee had been in business in the city of Buffalo for several years, and the vendor must be supposed to have contracted with reference to the extent of the vendee's business."

The evidence conclusively establishes — and it is uncontradicted — that the defendant intended when it entered into the contract in question only to obligate itself to supply ice for the retail trade of Wollenberg & Taft, even assuming that it knew they were then incorporated, and that Wollenberg, plaintiff's president, who negotiated the contract on its behalf, intended the defendant should understand that was the extent of its obligation. Wollenberg testified: "I wanted Webster to understand, when I told them 'we were incorporated,' that the 'we' was Wollenberg & Taft." His evidence also shows that he concealed from the defendant the identity of the persons interested in the corporation, although asked for such information by Mr. Webster. It is true Wollenberg testified that he informed Mr. Webster that they were going to buy out Neumann, Harley & Randall and Staley, and he stated: "I told him (Webster) we were going to buy them out before Webster ever offered to make a contract." This was contradicted by Webster, but it is not important, if true, because prior to making the contract in question Wollenberg & Taft were delivering ice to the parties

named as a part of their wholesale trade, and it was conceded that such sale and delivery of ice was not included in the contract. The trouble is, that immediately after the contract was made the plaintiff insisted that the defendant should supply ice for the retail trade of practically five ice dealers, rather than of one.

From a careful examination of the evidence, which in many respects is confusing, we have been unable to discover a single fact which would justify the conclusion that the defendant intended, under the contract, to supply any ice other than that required for the retail business of Wollenberg & Taft as formerly conducted, or as it might be increased in the ordinary course of trade, or which indicates that Wollenberg did not know and fully understand that such was the extent of the obligation which the defendant intended to assume.

The testimony of Wollenberg bearing upon most of the issues involved was inconsistent and contradictory, and in conflict with much of his evidence given upon the former trial, yet we think it must be held that no evidence was given by him which tended to show that the minds of the parties to the contract in any sense met upon the proposition that the defendant was to supply ice for the retail trade of Wollenberg & Taft, Neumann, Harley & Randall and Staley, although the business of each of such concerns was included in the business of the plaintiff corporation at the time the agreement in question was executed. Not only is the correctness of this conclusion established by the testimony of the witnesses, but all the circumstances point to the same result. A fair interpretation of the contract is that ice was to be furnished for the plaintiff only in case of exigency, when the transportation companies had failed to deliver ice as required; as stated in the contract, when no ice was " on track." It appears without contradiction that under such circumstances it was customary for ice dealers in the city of Buffalo to accommodate each other, and it is evident that the purpose of the contract in question, so far as the defendant was concerned, was to accommodate the plaintiff in that regard. The price, one dollar and twenty cents per ton, to be paid for the ice was substantially its cost. On the same day the contract in question was made Wollenberg sold ice which he had contracted to the Citizens Ice Company for one dollar and forty cents per ton, to be taken by the

vendee from the cars of the Grand Trunk Railway.   The retail trade of Wollenberg & Taft, as was known by the defendant, only amounted to about one-fourth of the retail trade of the combined companies.   Wollenberg, according to his own version of the transaction, stated to the defendant that only the business of Wollenberg & Taft was incorporated; instead, the business of four other dealers was at that time, under arrangement previously made, included and taken over by the plaintiff corporation, and immediately upon the execution of the contract the retail wagons of these five concerns appeared at the place of business of the defendant, demanding that ice be delivered to them.   It is apparent from the evidence that it was the purpose of Wollenberg, by means of plaintiff's incorporation and of the contract in question, and through misrepresentation, to procure ice to be delivered largely in excess of the amount which the defendant expected would be necessary under the contract, and largely in excess of the amount which Wollenberg intended the defendant should understand it was obligated to deliver, and we think there is no evidence upon which a different finding could be predicated.

The demand of the plaintiff for ice which was required for the retail trade, not only of Wollenberg & Taft, but also of Neumann, Harley & Randall and Staley, was not a demand within the terms of the contract, and the defendant was justified in refusing to comply therewith.   The plaintiff had willfully interfered with and obstructed the performance of the contract on the part of the defendant by mixing and consolidating the retail trade of the five different ice dealers with its business, and, therefore, the defendant was justified in refusing to perform the conditions of the contract. By reason of plaintiff's conduct it was practically impossible for the defendant to determine what amount of ice, if any, was required for the retail trade of Wollenberg & Taft, because of the fact that they had no "ice on track."

In *Taylor* v. *Risley* (28 Hun, 144) the court said: " The law will not permit a party who has become entitled to the performance of an agreement by another so to intervene as to prevent such performance being made, and then on the basis of such failure to claim damages against the party prevented, because of his omission to perform his agreement." (*Dolan* v. *Rodgers*, 149 N. Y. 491.)

Entertaining the views above indicated, it is unnecessary to discuss the other questions raised by the respondent upon this appeal.

The conclusion is reached that the judgment and order appealed from should be affirmed, with costs.

ADAMS, P. J., WILLIAMS and HISCOCK, JJ., concurred; SPRING, J., not voting.

Judgment and order affirmed, with costs.