## BOTHWELL v. COMMISSIONER OF INTERNAL REVENUE.
## DARBY v. SAME.
### Nos. 1146, 1147.

Circuit Court of Appeals, Tenth Circuit.
April 10, 1935.

Geo. E. H. Goodner, of Washington, D. C., for petitioners.

Helen R. Carlos, Sp. Asst. to the Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., on the brief), for the United States.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge.

The Brazos Oil Corporation, hereinafter called the parent corporation, was organized in 1918 with an authorized capital stock of 500,000 shares. 201,000 shares of such stock were issued and outstanding on June 28, 1922. It owned all of the stock of the Brazos River Oil Corporation, hereinafter called the subsidiary. The two corporations had not prospered, and in 1922 their officials approached Darby, an experienced and successful oil operator, with a view to inducing him to accept the general management of the corporations. Darby was unwilling to assume the management of the corporations without an option to acquire a substantial block of the stock of the parent corporation, in order that he might be in a position to share in any benefits which would inure to the corporations from his management, should it be successful.

Negotiations between the corporations and Darby resulted in the execution concur-

rently of two contracts on June 28, 1922, one between the parent corporation and Darby and the other between him and the subsidiary.[1]

The contract with the parent corporation provided that Darby should serve as its general manager for a term of five years without salary, and that the parent corporation would cause the subsidiary to enter into a contract with Darby to act as its general manager also for the same term at a salary of $12,000 a year.

It further provided: That Darby should have the option to purchase 181,000 shares of the capital stock of the parent corporation at any time prior to June 30, 1927, at $2.56 per share, which its Board of Directors had determined to be the fair value of its stock on June 26, 1922; that in the event of Darby's death his personal representative might exercise the option within three months thereafter, and that any assignee of Darby's might exercise the option within five months thereafter; and that, with the exception of the 181,000 shares, and 20,000 shares which might be issued to employees upon the recommendation of Darby as general manager with the approval of the Board of Directors, no stock of the parent corporation should be issued prior to the expiration of the option, and that no dividends should be distributed until $300,000 had accumulated from future earnings or until the option had been exercised.

The contract with the subsidiary provided that Darby should serve as its general manager for five years at an annual salary of $12,000.

Prior to June 28, 1922, Darby had been associated with Bothwell in the oil business, and he desired Bothwell's assistance in the management of such corporations. It was agreed that Bothwell should be employed as assistant manager by the subsidiary at a salary of $10,000 annually. To induce Bothwell to accept this employment, Darby agreed that Bothwell might share in the option to the extent of 40,000 shares.

By supplemental contracts entered into on March 16, 1926, their terms of employment were extended to June 30, 1929, Bothwell's salary was increased to $12,000 yearly, the option price on the stock was reduced to $2.00 a share, and the reserve surplus required before dividends could be declared, was increased to $500,000. The reduction of the option price from $2.56 to $2.00 a share was made because the latter figure more nearly represented the value of the stock in June, 1922.

At the time the original contracts were made, a group owning the majority of the outstanding stock of the parent corporation entered into an agreement creating a voting trust for a term of five years. The agreement provided for five voting trustees, of which Darby and Bothwell were two, and that no vote should be valid unless concurred in by four-fifths of the trustees.

During the years 1922 to 1924, inclusive, the corporations earned no net profits, but by 1927 they were prospering and the stock of the parent corporation was selling for about $8.00 a share.

In December, 1927, Darby and Bothwell exercised their options and purchased the stock at $2.00 a share. In 1928 Darby sold 9,943 shares at a net profit of $138,818.28, and Bothwell sold 9,000 shares at a net profit of $100,180. Individual income tax returns for 1928 were prepared for Darby and Bothwell by accountants and filed. It was stated in such returns that the stocks sold were acquired in 1922, and the above profits were reported as capital gains subject to a tax of $12\frac{1}{2}\%$ under the provisions of section 101, Revenue Act of 1928 (45 Stat. 791, 811, 26 USCA § 2101).

The commissioner held that in each case the profit was ordinary gain, subject to both the normal tax and surtax, and proposed an additional assessment against Darby of $17,465.14, and against Bothwell of $10,141.89. A 5% negligence penalty was also proposed against Bothwell, based on his failure to report the true date of the acquisition of the stock.

Each filed a petition for redetermination with the Board of Tax Appeals. Bothwell's petition was filed October 25, 1930, and Darby's February 4, 1931. Both petitions set up that the profits derived from the foregoing transactions were capital gains, and therefore not subject to normal tax and surtax.

Amended petitions were filed by Darby and Bothwell on November 16, 1932, which set out, first, that the profit from the sales of stock was capital gain, and second, if it was

---

[1] The names of the two corporations were changed to Darby Petroleum Corporation and Darby Petroleum Corporation of New York, respectively, shortly after the contracts were executed.

not, then part of it was compensation for services and the cost of the stock should have been computed at the fair market value in December, 1927, or $8.00 a share. Neither Darby nor Bothwell reported any part of the stock as compensation for services, in his tax return for 1927.

The commissioner, in his answers to such amended petitions, set up that Darby and Bothwell were estopped from making the alternative claim, because of their failure to report any part of the stock value as compensation for services, in their returns for 1927. A negligence penalty of 5% was also asserted against Darby.

The board sustained the contentions of the commissioner, and also asserted the negligence penalty against Darby.

█ Darby and Bothwell now concede they erred in reporting the income as capital gain, but assert that the difference between the option price and the fair market value of the stock at the time they acquired it, was a reward for their services. They contend the board erred in holding that the cost basis for determining the gain or loss on the transactions, was the option price rather than the fair market value in December, 1927, when the stock was acquired.

If the difference between the option price and the fair value of the stock in 1927 was compensation for services, then Darby and Bothwell were obligated to report such difference as income in their returns for 1927, and to pay the tax thereon. By failing to report such income, each in effect declared that no such income had been received by him. Crane v. Commissioner (C. C. A. 1) 68 F.(2d) 640, 641. Furthermore, up to the time the amended petitions were filed, each had asserted that the income received by him was capital gain rather than compensation for services. At the time the amended petitions were filed the statute of limitation had run as to the 1927 taxes. In Stearns Co. v. United States, 291 U. S. 54, 61, 54 S. Ct. 325, 328, 78 L. Ed. 647, the court said:

"The applicable principle is fundamental and unquestioned. 'He who prevents a thing from being done may not avail himself of the nonperformance which he has himself occasioned, for the law says to him, in effect: "This is your own act, and therefore you are not damnified." ' Dolan v. Rodgers, 149 N. Y. 489, 491, 44 N. E. 167; and Imperator Realty Co. v. Tull, 228 N. Y. 447, 457, 127 N. E. 263; quoting West v. Blakeway, 2 Man. & G. 729, 751. Sometimes the resulting disability has been characterized as an estoppel, sometimes as a waiver. The label counts for little. Enough for present purposes that the disability has its roots in a principle more nearly ultimate than either waiver or estoppel, the principle that no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong. Imperator Realty Co. v. Tull, supra. A suit may not be built on an omission induced by him who sues."

In Askin & Marine Co. v. Commissioner (C. C. A. 2) 66 F.(2d) 776, 778, the court said:

"While the commissioner must investigate returns to satisfy himself of their correctness in fact and law, a taxpayer may not benefit at the expense of the government by misrepresenting facts under oath; by succeeding in having the commissioner accept its representations as the truth; and by claiming later that what it represented to be true might have been found false had the commissioner refused to have faith in the sworn return. Commissioner v. Liberty Bank & Trust Co. (C. C. A.) 59 F.(2d) 320."

See also Edward G. Swartz, Inc., v. Commissioner (C. C. A. 5) 69 F.(2d) 633.

Darby and Bothwell each having declared in 1927 that no part of the value of the stock was compensation for services, and having continuously asserted from 1928 until after the statute of limitation had run against taxes for 1927, that the whole of the profit derived from the sale of such stock was capital gain, they are now precluded from asserting that a portion of the value of such stock was compensation for services. They are barred from so doing by their wrongful acts and omissions.

█ Furthermore, we agree with the finding of the board that no part of the profit from the transactions involved here was compensation for services, taxable in 1927, but that the entire profit was derived from the sale of stock in 1928, and since the stocks were held less than two years (see section 101 (a) and (c) (8), Rev. Act of 1928, 45 Stat. 811, 26 USCA § 2101 (a), (c) (8), the profit thereon was subject to normal tax and surtax in 1928.

█ Stock given to an employee as remuneration for services is income and taxable at its fair market value at the time it is received. Old Colony Trust Co. v. Commis-

sioner (C. C. A. 1) 59 F.(2d) 168; Crowell v. Commissioner (C. C. A. 6) 62 F.(2d) 51; Olson v. Commissioner (C. C. A. 7) 67 F. (2d) 726. And where a contract is entered into for the purpose of providing a reward or remuneration for services, a taxable gain results to the extent of the difference between the cost of the stock and its fair market value at the time of delivery. See Albert R. Erskine v. Commissioner of Internal Revenue, 26 B. T. A. 147; Kingsbury v. Commissioner, 31 B. T. A. ——.

Darby and Bothwell rely principally upon the Erskine Case, supra. In that case Erskine, in addition to his salary as president of the Studebaker Corporation, was given the right, by agreement, to exercise an option from time to time to buy a certain number of company shares. The right to exercise the option was conditional. It accrued to Erskine only provided his management resulted in net earnings by the company of not less than a stipulated amount. It was plainly additional compensation for services.

The situation here was materially different. Darby and Bothwell were employed as manager and assistant manager of the two corporations. They were given options to purchase stock in the parent corporation at $2.56 a share, which was the value then placed upon the stock by the directors of that corporation. No conditions attached to the options. They could have exercised them immediately, had they elected so to do. Had they exercised the options without delay, they would have received nothing more than they paid out, and the future success of the two corporations would have increased the value of their stock, or capital investment. No doubt the options were inducements to them to enter into the contracts of employment, but they constituted a present consideration and not an agreement to pay for services in the future.

There is no showing that the value of the options in 1922 was in excess of the difference between the option price of $2.56 a share and the then actual value of the stock of $2.00 a share. Absent such a showing, we must conclude the entire gain was realized in 1928.

Finally, it is contended that the board erred in sustaining the negligence penalty imposed on Bothwell, and in imposing a like penalty on Darby. The penalty was asserted pursuant to section 293 (a), Revenue Act 1928 (45 Stat. 858, 26 USCA § 2293 (a).[2]

The assessment of such a penalty is a purely administrative act dependent upon a finding of the existence of negligence. Board v. Commissioner (C. C. A. 6) 51 F. (2d) 73. This is conceded, but Darby and Bothwell contend that under a ruling by the Internal Revenue Bureau [3] in effect in 1928, they were authorized to add the period of the options and treat the stock as if acquired in 1922.

The regulation contains nothing to support the interpretation contended for. It follows that the board's finding is supported by substantial evidence that Darby and Bothwell were negligent in failing to disclose that the stock was acquired in 1927, when the options were exercised.

The judgments are affirmed.

BRATTON, Circuit Judge (concurring in part).

It is my conclusion that the difference between the cost of the stock and its market value at the time the option was exercised represented compensation for services; that it was received in 1927, and was taxable as such exclusively during that year. In all other respects, I join in the opinion of the majority.

---

[2] Section 293 (a), Revenue Act 1928 (26 USCA § 2293 (a) in part reads as follows:

"Negligence. If any part of any deficiency is due to negligence, or intentional disregard of rules and regulations but without intent to defraud, 5 per centum of the total amount of the deficiency (in addition to such deficiency) shall be assessed, collected, and paid in the same manner as if it were a deficiency. * * *"

[3] I. T. 1786 reads as follows:

"In the case of stock acquired upon the exercise of rights, if the stock with respect to which such rights were issued, was acquired and held by the taxpayer for profit or investment for more than two years, he may elect to be taxed upon the gain from the sale of such stock under the provisions of Section 206 of the Revenue Act of 1921."