# SOUTHWESTERN COAL COMPANY *v.* McBRIDE.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 230. Argued April 21, 1902.—Decided May 19, 1902.

The act of Congress, approved June 28, 1898, known as the Curtis Act, did not operate to deprive the lessors of coal mines in the Choctaw Nation of royalties due and owing to them for coal mined under valid leases, prior to that date.

THIS litigation was begun in the United States Court for the Indian Territory, Central Judicial District, sitting at Atoka, by

the filing of a bill in equity on behalf of Hyram Y. McBride, a citizen of the Choctaw Nation. The defendants named in the bill were the National Bank of Denison, the Southwestern Coal and Improvement Company (hereafter referred to as the Coal Company) and J. A. Randell, as administrator of the estate of G. G. Randell, deceased. The Coal Company is an appellant in this court, while McBride and Randell are the appellees. It was averred in the bill that on April 6, 1894, the complainant (McBride) was the owner of a three twenty-seconds share in a certain coal or mining interest situated in the town of Coalgate, Indian Territory, which coal claim was being operated, under royalty contracts, by the Coal Company ; that, to secure an indebtedness due by the complainant to the National Bank of Denison, complainant had executed and delivered a mortgage upon his aforesaid share ; and that, under the assumed authority of a power of sale contained in the mortgage and pursuant to a combination between the bank and one G. G. Randell, a purported sale of said share of complainant was made to said Randell, but that said pretended sale, for various stated reasons, was illegal and void. It was further averred that from the time of said pretended sale the Coal Company had failed to make payments of royalties due upon said share of complainant, and was liable to account therefor. The prayer of the bill was, in substance, that the sale in question be declared a nullity and that the various defendants account to complainant in respect to the royalties received and retained.

The bank filed its answer, and therein disclaimed having any interest in the unpaid royalties claimed by complainant and Randell, as administrator of G. G. Randell. In its answer the Coal Company, among other things unnecessary to be stated, admitted that it had withheld payments from March 1, 1897, of royalties on the coal mining share referred to in the complaint, and averred that the amount of said unpaid royalties aggregated $2617.29. The Coal Company also further specifically pleaded in its answer as follows:

"Defendant Coal Company further states that on the 28th day of June, 1898, the President of the United States approved an act entitled ' An act for the protection of the people of the

Indian Territory, and for other purposes,' and which said act of Congress is commonly known as the ' Curtis bill,' and by section sixteen of said act it was provided that it should be unlawful for any person, after the passage of said act, except as otherwise provided therein, to claim, demand or receive for his own use, or the use of any one else, any royalty on coal, or any rents on any lands or property belonging to any one of said tribes or nations in said Territory, or for any one to pay to any individual any such royalty or rents or any consideration therefor, whatsoever.

" And that by virtue of the provisions of said act of Congress hereinabove referred to, on and after the 28th day of June, 1898, no royalties accrued to any person upon this said interest claimed by the plaintiff in said mines; and that by virtue of the provisions of said act of Congress, hereinabove referred to, the royalty which accrued upon said interest so claimed by the plaintiff in said mines and which said Coal Company had not paid over to said defendant. bank in accordance with plaintiff's instructions, is no longer due and payable to the said plaintiff or any person claiming under him, and cannot be claimed, demanded or received by the plaintiff, or any other person; and that by virtue of section eighteen of said act of Congress, hereinabove referred to, any person claiming, demanding or receiving any of the royalties which the plaintiff claims accrued upon the interest claimed by him in said coal mines, becomes guilty of a misdemeanor, which is punishable by a fine of not less than one hundred dollars ($100.00,) and is liable to forfeit possession of the property in question."

A written stipulation was thereafter entered into between the complainant and the defendant Randell, administrator, wherein it was agreed that the complainant was entitled to $900 of the sum admitted by the Coal Company to be unpaid, and that the said defendant administrator was entitled to the remainder, or the sum of $1717.29. Upon the pleadings in the cause and the stipulation referred to, a motion for judgment against the Coal Company for $2617.29 was filed on behalf of the complainant and said defendant administrator. The motion was granted, and a judgment was entered accordingly. An

appeal was taken to the Court of Appeals for the Indian Territory, and that court affirmed the judgment. 54 Southwestern Rep. 1099. The judgment of affirmance was in favor of McBride and Randell, administrator, against the Coal Company and the sureties on its supersedeas bond (Clarence W. Turner and Homer B. Spaulding,) for the amount of the original judgment, with interest and costs. An appeal was then prosecuted by the Coal Company, and Turner and Spaulding to the United States Circuit Court of Appeals for the Eighth Circuit. That court affirmed the judgments, (104 Fed. Rep. 1007,) and the cause was then appealed to this court.

*Mr. James Hagerman* for appellant. *Mr. Clifford L. Jackson* and *Mr. Joseph M. Bryson* were on his brief.

No counsel appeared for appellee.

Mr. JUSTICE WHITE, after making the foregoing statement, delivered the opinion of the court.

The sole question presented for the consideration of the courts below and necessary to be passed upon by this court was, and is, Did the act of Congress, approved June 28, 1898, known as the Curtis Act, operate to deprive the lessors of coal mines in the Choctaw Nation of the royalties due and owing to them for coal mined under valid leases prior to the date named? The question necessarily requires a construction of section 16 of the act, which reads as follows:

"SEC. 16. That it shall be unlawful for any person, after the passage of this act, except as hereinafter provided, to claim, demand or receive, for his own use or for the use of any one else, any royalty on oil, coal, asphalt or other mineral, or on any timber or lumber, or any other kind of property whatsoever, or any rents on any lands or property belonging to any one of said tribes or nations in said Territory, or for any one to pay to any individual any such royalty or rents or any consideration therefor whatsoever; and all royalties and rents hereafter payable to the tribe shall be paid, under such rules and regulations as

may be prescribed by the Secretary of the Interior, into the Treasury of the United States to the credit of the tribe to which they belong: *Provided,* That where any citizen shall be in possession of only such amount of agricultural or grazing lands as would be his just and reasonable share of the lands of his nation or tribe and that to which his wife and minor children are entitled, he may continue to use the same or receive the rents thereon until allotment has been made to him: *Provided, further,* That nothing herein contained shall impair the rights of any member of a tribe to dispose of any timber contained on his, her or their allotment."

A particular consideration of section 18 of the act, referred to in the answer of the Coal Company, is not required, as the section merely provided for the punishment of any person convicted for violating any of the provisions of sections 16 and 17 of the act.

On the part of the appellants it is contended that the section in question is retrospective in its operation and inhibits the collection of royalties due and owing at the time of the approval of the Curtis Act, even though such royalties, had the statute in question not been passed, might lawfully have been collected by the lessors to whom it had been agreed the same should be paid. The Circuit Court of Appeals, however, sustained the contention that the provisions of the section in question had only a prospective operation, and in so doing we think no error was committed. We adopt the reasoning of the court below on the subject. The court said (104 Fed. Rep. 473):

"The function of the legislature is to prescribe rules to operate upon the actions and rights of citizens in the future. While, in the absence of a constitutional inhibition, the legislature may give to some of its acts a retrospective operation, the intention to do so must be clearly expressed, or necessarily implied from what is expressed; and, assuming the legislature to possess the power, its act will not be construed to impair or destroy a vested right under a valid contract unless it is so framed as to preclude any other interpretation. If Congress had intended to deprive lessors of the royalties due and owing to them at the date of the act it would have used appropriate

language to express that intention, and would necessarily have made some provision for the disposition of such royalties. But it is clear from the language of the act that it does not deal with royalties already paid, or already due and owing to lessors under leases for coal already mined. . . . Congress, by the Curtis Act, neither attempted nor intended to interfere with the rights of lessors to royalties due them under their leases at the date of the passage of the act."

It is asserted in the brief of counsel for the appellants that the contract under which the royalties in question became due was made under authority of a tribal law of the Choctaw Nation, and we are asked to assume that the authority to make the lease in question was not either directly or indirectly conferred by Congress, and that in consequence the contract was of no validity by reason of section 2116 of the Revised Statutes, wherein, among other things, it is declared that " no purchase, grant, lease, or other conveyance of lands, or of any title or claim thereto, from any Indian nation or tribe of Indians, shall be of any validity in law or equity, unless the same be made by treaty or convention entered into pursuant to the Constitution." We do not decide this contention, in view of the fact that it does not appear to have been raised or considered in the courts below, and it is besides entirely inconsistent with the answer of the Coal Company, wherein it is substantially conceded that the lease in question was valid in its inception, and that the unpaid royalties would have been due and owing to the lessor or his assigns, but for the effect of the alleged nullifying provisions of section 16 of the Curtis Act.

*Judgment affirmed.*