K. A. Lundstrom *v.* United States (No. 3501)[1]

United States Court of Customs and Patent Appeals, November 30, 1932

*George R. Tuttle* for appellant.

*Charles D. Lawrence*, Assistant Attorney General (*William Whynman*, special attorney, of counsel), for the United States.

[Oral argument October 3, 1932, by Mr. Lawrence; submitted on brief by appellant]

Before Graham, Presiding Judge, and Bland, Hatfield, Garrett, and Lenroot, Associate Judges

Garrett, Judge, delivered the opinion of the court:

On November 21, 1927, appellant imported a boat built in Skarsatra, Sweden, in 1919, described in the invoice as "one motor boat

---

[1] T. D. 46056.

with inventories." The importation was at or through the port of San Francisco, Calif.

The craft was described by a witness as follows:

It was a steel hull about 55 feet long, and it was a little over 11-foot beam and I think about 15 tons net, the gross tonnage having been around 22. It had crew's quarters up forward to accommodate two and an engine room, and after the engine room was the galley and the wash room, and then there were accommodations for four cabin passengers and another cabin with accommodations for two passengers.

The witness, a son of the importer, further stated that there was no change in the hull of the vessel from the time of importation up to the time it was documented in the customhouse; that it was a cabin boat; that it had in it, at the time it was brought in on the deck of a vessel, a Swedish Diesel motor of 75 horsepower, which was its means of propulsion; that it was an oil burner, and that it was to be used for pleasure.

As imported, the boat seems to have borne the name *Polar*. After importation the name was changed to *Madhatter*, and on April 14, 1928, Mr. Lundstrom procured license for same as a pleasure yacht under the latter name. The license recites:

This vessel can not engage in trade—(Not being steam or sail can not be documented for foreign trade).

The consular invoice bears date of September 8, 1927, and recites:

Invoice of one motor boat purchased or agreed to be purchased * * * as per order accepted July 28, 1927.

The consumption entry was made in the United States customhouse of San Francisco on November 21, 1927, reciting the arrival of the boat at that port on November 20, 1927, on the "Swed MS *Canada*."

The collector of customs classified the boat as a motor boat and assessed duty under the provisions of paragraph 370 of the Tariff Act of 1922, which reads:

PAR. 370. Airplanes, hydroplanes, motor boats, and parts of the foregoing, 30 per centum ad valorem.

The entry was liquidated on May 14, 1928. On July 11, 1928, the importer filed a protest against the collector's liquidation alleging among other things:

This yacht is a vessel as defined by R. S. 3, and within the meaning of the navigation laws relating to documenting, entrance, clearance, etc., and hence is not subject to duty under the Tariff Act, not being imported merchandise.

We have set forth the dates with particularity because, as will later appear, some of these are of importance in deciding the issues raised.

The United States Customs Court overruled the protest in an opinion by Judge Waite. A petition for rehearing was allowed. Upon the rehearing further testimony was taken and, following this,

the Customs Court, in an opinion by Judge Evans, adhered to its original holding and again entered judgment overruling the protest. The instant appeal to this court was then taken.

In overruling the protest the court below followed its own prior decision in *Roberts* v. *United States*, T. D. 43170, affirmed by us in 17 C. C. P. A. (Customs) 215, T. D. 43653, wherein a motor boat named *Dreamer* was held to be dutiable under said paragraph 370. The boat at issue is quite similar in size, arrangement, etc., to the *Dreamer*, and did nothing further appear we think this case would clearly be controlled by the *Roberts* case, *supra*, as the Customs Court held, and might be quite briefly disposed of.

As the law stood at the time of the collector's liquidation, May 14, 1928, his classification of the merchandise appears to have been correct, but some 15 days after the liquidation, to wit, on May 29, 1928, the Revenue Act of 1928 was enacted. Its enactment preceded the filing of the protest in this case on July 11, 1928, by some 40 or more days.

Section 708 of the Revenue Act of 1928 reads as follows:

SEC. 708. DEFINITION OF THE TERM "MOTOR BOAT."

The term "motor boat," when used in the act of September 21, 1922, includes a yacht or pleasure boat, regardless of length or tonnage, whether sail, steam, or motor propelled, owned by a resident of the United States or brought into the United States for sale or charter to a resident thereof, whether or not such yacht or boat is brought into the United States under its own power, but does not include a yacht or boat used or intended to be used in trade or commerce, nor a yacht or boat built, or for the building of which a contract was entered into, prior to December 1, 1927.

The portion of the foregoing section pertinent to the issue before us appears to be:

The term "motor boat," when used in the Act of September 21, 1922, * * * does not include a yacht or boat * * * built * * * prior to December 1, 1927.

It is noted that the quoted section does not speak of the Tariff Act of 1922 but of the "Act of September 21, 1922." It seems to be agreed, however, by counsel for the respective parties to this suit that the reference is to the tariff act "Approved, Sept. 21, 1922, 11.10 a. m.," and we so accept it. An examination of the several acts approved by the President on that date, as given in Part 1, Vol. 42, United States Statutes at Large (67th Congress, 1921–1923) fails to reveal any other act to which section 708, *supra*, could have the slightest relevancy.

It further appears from the text and provision of the Revenue Act of 1928 that said section 708 became effective "upon its enactment." Section 716 of said act reads:

Except as otherwise provided, this Act shall take effect upon its enactment.

Nothing is found which provides any other effective date for section 708.

The Tariff Act of 1922 did not contain any definition of the term "motor boat." Section 401 of Title IV thereof was devoted to definitions of various terms, "when used in this title." The first of these defined "vessel" as follows:

(a) VESSEL.—The word "vessel" includes every description of water craft or other contrivance used, or capable of being used, as a means of transportation in water or in water and in air.

Section 3 of the Revised Statutes, under which appellant claims, reads:

The word "vessel" includes every description of water craft or other artificial contrivance used, or capable of being used, as a means of transportation on water.

The proper definition of the term "motor boat" for tariff purposes, under the Tariff Act of 1922, appears to have occasioned the Treasury Department some concern at one time. On January 27, 1926, a letter was issued by an assistant secretary of the Treasury to the collector of customs at New York, which was officially published as T. D. 41314, and which read as follows:

TREASURY DEPARTMENT, *January 27, 1926.*

SIR: The department has before it for consideration and decision the question of the class of vessels of 5 net tons or over which are properly dutiable under the provision in paragraph 370 of the tariff act for motor boats.

The department has been unable to learn either from a perusal of the hearings before Congress or from the Congressional Record what vessels were intended to be embraced within the provision for motor boats, but as Congress in section 1 of the act of June 9, 1910, defines motor boats as "every vessel propelled by machinery and not more than 65 feet in length, except tugboats and towboats propelled by steam," you are hereby directed to assess duty at the rate of 30 per cent ad valorem on all motor boats not more than 65 feet in length, measured from end to end over the deck, excluding sheer, to the end that there may be a judicial determination of the question as to motor boats which are dutiable under paragraph 370.

Respectfully,                                              L. C. ANDREWS,
    (100143.)                                          *Assistant Secretary.*
COLLECTOR OF CUSTOMS, *New York.*

Following this, it is assumed, collectors proceeded to classify motor boats as therein directed. The court decisions in the *Roberts* case *supra*, which case originated quite a while before the passage of the Revenue Act of 1928, upheld such classification. The said revenue act, although it had passed before the decision of the United States Customs Court in the *Roberts* case (decided by that court January 24, 1929, and by us October 28, 1929), was not referred to in said case.

It is noted that in the protest filed by importer in the instant case, although same was filed more than 40 days after the passage of the Revenue Act of 1928, no reference was made to section 708, *supra*,

and there is nothing in the record to indicate whether the possible effect of said section was ever in fact brought to the collector's attention or received any consideration by him. We do find that on June 6, 1928, T. D. 42796 was issued by the Treasury Department to "Collectors of customs and others concerned," inviting their attention to section 708, which was quoted in full. No instructions were contained in said Treasury decision.

The first reference we find in the record before us to section 708, *supra*, is in the first opinion of the Customs Court. After pointing out the applicability of the holdings in the *Roberts* case, *supra*, to the case at bar, that court continued:

A new issue is presented in plaintiff's brief in the instant case, however, viz, that under section 708 of the Revenue Act of 1928, as published in T. D. 42796, defining the term "motor boat," as found in said paragraph 370, the boat in question is exempt from duty.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

It appears from the record that the boat in question was built in 1919. It would, therefore, appear to be exempt from duty under the last clause of said section. An examination of the protest quoted above, however, discloses that no claim was made therein under section 708, *supra*, although that claim was available to the plaintiff at the time the protest was filed.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

In view of this state of the record we overrule the protest.

It thus appears that the first decision of the court below turned upon its finding that the protest was insufficient. This also appears to be true as to the second decision. The second opinion states:

The former decision in the instant case recites that the protest discloses no claim under paragraph 708 of the revenue act, *supra*. We take it to mean that if plaintiff desired to claim that his motor boat was exempt because it was built prior to December 1, 1927, he should have made that claim in his protest. This he did not do, and we think he should have asserted such a claim in order to advise the collector what was in his mind.

As we interpret the opinion of the court below, that tribunal practically adjudged that the boat in issue, by reason of section 708 of the Revenue Act of 1928, *supra*, ceased to be a motor boat for tariff purposes classifiable under paragraph 370 of the Tariff Act of 1922, and that, had the importer made proper reference to said section in his protest, he would have been entitled to the relief sought.

The importer in his original brief before us contended that the Customs Court was in error in holding the protest insufficient; that by reason of section 708, *supra*, the craft was not a motor boat for tariff purposes; that it was not imported merchandise in any tariff sense but a vessel and not subject to tariff duty. The Government contended it to be a motor boat and further contended that the protest was insufficient.

During the oral argument this court suggested that, even if we became convinced of error in the holding of the trial court that the

protest was insufficient, it might become necessary for us to determine whether said section 708 is here applicable under the facts of the case, and we requested briefs upon this question.

Counsel for appellant has furnished such brief and the same has received due attention.

In substance, appellant contends that it was within the power of Congress to make section 708, *supra*, retroactive and that it did so. *United States* v. *Heinszen*, 206 U. S. 370, and *United States* v. *Godchaux Sugars (Inc.)*, 11 Ct. Cust. Appls. 529, T. D. 39678, are cited. These cases have been examined by us and, in our opinion, the issues involved in them are not on all fours with the issue here.

As we view the case, it must first be determined whether Congress did make, or attempt to make, the section retroactive before any necessity arises of considering whether it could do so.

The fact that it may be in the nature of an interpretative enactment—that is, that by defining "motor boat" for tariff purposes, it interpreted paragraph 370 of the Tariff Act of 1922—does not of itself make it retroactive, nor does it indicate an intent upon the part of Congress to make it so.

Prior to the passage of section 708 the interpretation of paragraph 370 was a purely judicial question to be determined by the courts. It, in fact, remains a judicial question, but the courts will, of course, look to the interpretative language of Congress as an aid in making their own interpretation.

We are unable to see how section 708, *supra*, passed May 29, 1928, not purporting by any of its expressions to be retroactive, may be properly held to affect the collector's classification and liquidation of the motor boat, such liquidation having been definitely made May 14, 1928.

In *United States Fidelity Co.* v. *Struthers Wells Co.*, 209 U. S. 306, 314, the Supreme Court of the United States said:

There are certain principles which have been adhered to with great strictness by the courts in relation to the construction of statutes as to whether they are or are not retroactive in their effect. The presumption is very strong that a statute was not meant to act retrospectively, and it ought never to receive such a construction if it is susceptible of any other. It ought not to receive such a construction unless the words used are so clear, strong, and imperative that no other meaning can be annexed to them or unless the intention of the legislature can not be otherwise satisfied. *Dash* v. *Van Kleeck*, 7 Johns, 499; *Jackson* v. *Van Zandt*, 12 Johns, 168; *United States* v. *Heth*, 3 Cranch, 399, 414; *Southwestern Coal Co.* v. *McBride*, 185 U. S. 499, 503; *United States* v. *American Sugar Co.*, 202 U. S. 563, 577.

Of similar purport is the decision in *White* v. *United States*, 191 U. S. 545, a syllabus of which reads:

Retrospective legislation is not favored. Unless the intention that a law is to have a retrospective operation is clearly evidenced in the law and its purposes the court will presume that it was enacted for the future and not for the past.

While it was within the power of the collector under certain circumstances to reliquidate at any time within 12 months after entry, as provided by section 521 of the Tariff Act of 1922, we are unable to see wherein he would have had the legal authority to make a reliquidation based upon section 708, *supra*, or to have considered said section in any reliquidation which he might have lawfully made. If he could not have considered it, obviously the courts may not.

In *Billings* v. *United States*, 232 U. S. 261, T. D. 34429, the court was confronted by an entirely different state of facts from that before us here, and the principle quoted in appellant's supplementary brief from 6 Ruling Case Law 311 does not apply here, for the reason, in part, that, in our opinion, we are not dealing with a situation in which retroactive legislation was even attempted. We are not called upon to determine any question of congressional power as to retroactive legislation.

Under the view which we take of the case, the question as to the sufficiency of appellant's protest is not material to our decision. It would have accorded with good practice to have made a reference to section 708 in the protest, since it was involved in appellant's contention, but as to whether such was a *sine qua non* we need not decide.

For the reasons given, rather than upon the grounds stated by the United States Customs Court, its judgment is *affirmed*.