**LARKIN et al. v. UNITED STATES.**
No. 10189.

Circuit Court of Appeals, Eighth Circuit.
Aug. 15, 1935.

Peter S. Rask, of Minneapolis, Minn. (Frank G. McCormick and P. J. Coffey, both of Minneapolis, Minn., on the brief), for appellants.

L. W. Post, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and George Philip, U. S. Atty., of Sioux Falls, S. D., on the brief), for the United States.

Before STONE, WOODROUGH, and BOOTH, Circuit Judges.

BOOTH, Circuit Judge.

This is an appeal in a consolidated cause from judgments entered for defendant after demurrers to complaints of plaintiffs had been sustained.

The actions were brought by the appellants, respectively (hereafter called taxpayers), to recover refunds of income tax payments made for the tax year 1927.

The actions were consolidated pursuant to the provisions of section 734, title 28 USCA.

The complaints alleged the following facts: The taxpayers were in 1920, and for many years prior thereto had been, employees of the Manchester Biscuit Company, a corporation in Sioux Falls, S. D. In that year the corporation sold to each of the taxpayers two hundred shares of its common stock at $100 per share. At the time of the sale, the stock had a fair market value of $250 per share. The taxpayers were permitted to buy the stock at $100 per share by reason of their long and faithful service.

In 1927 the taxpayers sold the stock of the Manchester Biscuit Company so acquired, two hundred shares each, for

$231.25 per share. In March, 1928, the taxpayers filed with the collector of internal revenue for South Dakota individual income tax returns for 1927, and in their returns reported a taxable profit from the sale of said stock in a sum equal to the difference between $100 per share and the sale price in 1927 of $231.25 per share. They paid income taxes on that basis.

The taxpayers further allege in their complaints that the amounts paid by them as their 1927 income tax on the reported profits from the sale of said stock were erroneously and illegally paid and collected; that on July 31, 1929, they filed written claims for refund of the sums so paid by each of them with the Commissioner of Internal Revenue, and alleged in said claims for refund that they, in fact, each sustained a taxable loss for the year 1927 by reason of said sales.

Attached to the complaints were Exhibit A, income tax return of taxpayer for 1927, and Exhibit B, claim of taxpayer for refund. These claims for refund were rejected by the Commissioner of Internal Revenue, and the present suits followed.

The demurrers interposed by the government to the taxpayers' complaints were on the ground that the complaints did not state facts sufficient to constitute a cause of action.

The court sustained the demurrers, judgments of dismissal were entered, and this appeal was taken therefrom.

The contention of appellants is, as we gather it from their brief, that taxable income resulted in the year 1920 from the stock purchase transactions in that year between the taxpayers and the corporation; that the statute and regulations applicable are section 213 (a) of the Revenue Act of 1918 (40 Stat. 1065), and a part of article 33, Regulations 45, under the Revenue Act of 1918, which read respectively as follows:

"Sec. 213. That for the purposes of this title * * * the term 'gross income'—

"(a) Includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid, * * * or gains or profits and income derived from any source whatever. The amount of all such items shall be included in the gross income for the taxable year in which received by the taxpayer."

"Art. 33, Regulations 45. * * * Compensation paid an employee of a corporation in its stock is to be treated as if the corporation sold the stock for its market value and paid the employee in cash. * * *"

The further contention of appellants is that no taxable income resulted from the sale of the stock in 1927, but in fact a loss resulted to the taxpayers, as appears by taking as the basis the market value of the stock in 1920 instead of the cost of such stock to the taxpayers, it being conceded that the sale price of the stock in 1927 was less than the market value thereof in 1920; that the error of the taxpayers in making their income tax returns in 1927 consisted in using as a basis the actual cost to them of the stock in 1920, instead of the fair market value as provided in Treasury Decision 3435, which was afterward incorporated as part of article 31, Regulations 69, relating to the Revenue Act of 1926, and which reads as follows: "Where property is sold by a corporation to a shareholder, or by an employer to an employee, for an amount substantially less than its fair market value, such shareholder of the corporation or such employee shall include in gross income the difference between the amount paid for the property and the amount of its fair market value. In computing the gain or loss from the subsequent sale of such property its cost shall be deemed to be its fair market value at the date of acquisition."

Appellants further contend that if any tax was due the United States by reason of the receipt of the stock by the taxpayers in 1920, such tax was barred by the statute of limitations on March 15, 1926, and all liability extinguished. See section 250 (d), Revenue Act 1918 (40 Stat. 1082); section 1106 (a), Revenue Act 1926 (26 USCA § 1249 note).

The contention of appellee is that it is at least doubtful from the decisions whether any taxable income arose in 1920 at the time the stock was received, inasmuch as the transaction of 1920 was not within the strict letter of the provision contained in article 33, Regulations 45, under the Revenue Act of 1918 (above

quoted); and inasmuch as the provisions contained in Treasury Decision 3435 were not in force until 1923. See Salvage v. Commissioner (C. C. A.) 76 F.(2d) 112; Commissioner of Internal Revenue v. Van Vorst (C. C. A.) 59 F.(2d) 677; Robinson v. Commissioner (C. C. A.) 59 F.(2d) 1008; Taplin v. Commissioner (C. C. A.) 41 F.(2d) 454.

The further contention of appellee is that appellants are precluded from claiming the benefit of the provisions of Treasury Decision 3435 (part of article 31, Regulations 69, under the Revenue Act of 1926); and, finally, that said Treasury Decision has no application to the cases at bar.

We think the contentions of appellee are well founded. We pretermit discussion of the first contention.

When the appellants made out their income tax returns for the year 1927, they included the stock transaction in controversy. Larkin in his return (Exhibit A) stated that his stock had been acquired between 1914 and 1920 at a cost of $27,075.50; that it was sold by him in 1927 for $56,716; that the expense of sale was $86.96; that the net gain was $29,552.54.

The statutes used by the taxpayers for determining the gain or loss in said stock transactions were sections 202 (a) and 204 (a) of the Revenue Act of 1926, which read as follows:

"Sec. 202. (a) Except as hereinafter provided in this section, the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the basis provided in subdivision (a) or (b) of section 204 [section 935 of this title], and the loss shall be the excess of such basis over the amount realized." 44 Stat. 11 (26 USCA § 933 (a).

"Sec. 204. (a) The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property." 44 Stat. 14 (26 USCA § 935 (a).

Nothing was stated to the effect that the stock had been acquired in whole or in part as compensation for services, although article 33 of Regulations 69 had been in force as part of former Regulations since prior to 1920. Nor was mention made in said income tax returns of the provision (article 31, Regulations 69) upon which the taxpayers now rely, and which has been quoted above.

This paragraph was not in existence in 1920. It was first promulgated in 1923 as Treasury Decision 3435, II-1 Cumulative Bulletin, 50, and was later incorporated in the Regulations.

It thus seems plain that at the time of making the tax returns for 1927, the taxpayers considered the stock transaction of 1920 as a plain purchase of stock and that article 33 and article 31 of Regulations 69 had no application. Later on, however, in July, 1929, the taxpayers apparently concluded that the paragraph above quoted from article 31, Regulations 69, did have application to their income tax returns for the year 1927, and that the returns actually made by them were erroneous. Demand for refund accordingly was made on the Commissioner of Internal Revenue, and this being refused, the present suit was brought.

The income tax returns of the taxpayers for the year 1920 are not before us, so that we are not advised of their contents; but return of the taxpayer Larkin for the year 1927 is before us as Exhibit A, made a part of the complaint. From this exhibit we learn nothing whatever about the stock transaction of 1920, but instead we are advised that the stock was acquired by the taxpayers from 1914 to 1920. We learn nothing to the effect that the stock was acquired in payment in whole or in part for services rendered. A plain purchase and sale of stock was stated and was relied upon both by the taxpayer and by the Commissioner of Internal Revenue. The tax was paid.

After the statute of limitations had run against the collection of any tax that might have been due for the year 1920, the taxpayer claimed error in his return for the year 1927. The error was not a mistake in the figures of calculation, but was an omission by the taxpayer to state the true character, as now claimed, of the stock transaction of 1920.

In Gregory v. Helvering, 293 U. S. 465, page 469, 55 S. Ct. 266, 267, 79 L. Ed. 596, 97 A. L. R. 1355, the court said: "The legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by

means which the law permits, cannot be doubted."

While this is true, yet the expression "by means which the law permits" opens up a field of inquiry.

In Askin & Marine Co. v. Commissioner (C. C. A.) 66 F.(2d) 776, page 778, the court said: "While the commissioner must investigate returns to satisfy himself of their correctness in fact and law, a taxpayer may not benefit at the expense of the government by misrepresenting facts under oath; by succeeding in having the commissioner accept its representations as the truth; and by claiming later that what it represented to be true might have been found false had the commissioner refused to have faith in the sworn return."

See, to the same effect, Stearns Co. v. United States, 291 U. S. 54, 54 S. Ct. 325, 78 L. Ed. 647; Commissioner v. Liberty Bank & Trust Co. (C. C. A.) 59 F.(2d) 320; Edward G. Swartz, Inc. v. Commissioner (C. C. A.) 69 F.(2d) 633; Bothwell v. Commissioner (C. C. A.) 77 F.(2d) 35.

In the Stearns Case the court said (291 U. S. 54, page 61, 54 S. Ct. 325, 328, 78 L. Ed. 647): "The applicable principle is fundamental and unquestioned. 'He who prevents a thing from being done may not avail himself of the non-performance which he has himself occasioned, for the law says to him, in effect: "This is your own act, and therefore you are not damnified."' Dolan v. Rodgers, 149 N. Y. 489, 491, 44 N. E. 167, and Imperator Realty Co. v. Tull, 228 N. Y. 447, 457, 127 N. E. 263; quoting West v. Blakeway, 2 Man. & G. 729, 751. Sometimes the resulting disability has been characterized as an estoppel, sometimes as a waiver. The label counts for little. Enough for present purposes that the disability has its roots in a principle more nearly ultimate than either waiver or estoppel, the principle that no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong. Imperator Realty Co. v. Tull, supra. A suit may not be built on an omission induced by him who sues."

We think the taxpayers are precluded by their conduct, as shown in their complaints, including exhibits, from maintaining the present suits.

Furthermore, in our opinion, the paragraph from article 31, Regulations 69 (Treasury Decision 3435), is not applicable to the case of the taxpayers here presented.

It is a rule of statutory construction that a statute should be considered as a whole, and not that its parts should be considered as separate enactments. Lewis' Sutherland Statutory Construction (2d Ed.) §§ 344, 348; Costanzo v. Tillinghast, 287 U. S. 341, 345, 53 S. Ct. 152, 77 L. Ed. 350; Hellmich v. Hellman, 276 U. S. 233, 237, 48 S. Ct. 244, 72 L. Ed. 544, 56 A. L. R. 379; Van Dyke v. Cordova Copper Co., 234 U. S. 188, 191, 34 S. Ct. 884, 58 L. Ed. 1273; Bartlett Trust Co. v. Elliott (D. C.) 30 F.(2d) 700; Wainwright v. Pennsylvania R. Co. (D. C.) 253 F. 459, 465; In re Crook (D. C.) 219 F. 979, 987.

We think the same rule of construction should be applied to Departmental Regulations.

Treasury Decision 3435 (afterward incorporated into the Regulations) was intended to introduce and did introduce a new practice. By that ruling, an employee who was allowed by his company to purchase stock in the company at a price less than the fair market value thereof was required to include in his gross income for the year in which the stock was received the difference between the actual cost to him of the stock and its fair market value. This was not all. As owner of the stock he was obliged to state in his income tax report, if and when he sold the stock, the gain or loss, the same as any other owner. But since he had already reported as income at the time he acquired the stock the difference between the actual cost to him of the stock and its fair market value, he was allowed in reporting the sale to assume that the cost to him was the same as the fair market value, thus avoiding the possibility of a double taxation.

The last sentence in Treasury Decision 3435 must be read in connection with what precedes. The provision of the last sentence applies only to the class of persons mentioned in the first sentence. It is an adjustment provision. The taxpayers in the case at bar were not and could not be in such class of persons, and therefore the last sentence has no application to them.

Again, Treasury Decision 3435 was prospective and not retroactive in its operation.

Such is the rule in regard to statutes, absent language or surrounding circumstances plainly indicating the contrary. Lewis' Sutherland Statutory Construction (2d Ed.) § 642; Brewster v. Gage, 280 U. S. 327, 337, 50 S. Ct. 115, 74 L. Ed. 457; United States v. Magnolia Co., 276 U. S. 160, 162, 48 S. Ct. 236, 72 L. Ed. 509; United States v. St. Louis, etc., Ry. Co., 270 U. S. 1, 3, 46 S. Ct. 182, 70 L. Ed. 435; Fullerton-Krueger Lumber Co. v. Northern Pacific, 266 U. S. 435, 45 S. Ct. 143, 69 L. Ed. 367; Cox v. Hart, 260 U. S. 427, 434, 43 S. Ct. 154, 67 L. Ed. 332; S. W. Coal & Improvement Co. v. McBride, 185 U. S. 499, 503, 22 S. Ct. 763, 46 L. Ed. 1010. And such we consider the better rule in regard to Departmental Decisions. Shearer v. Anderson (C. C. A.) 16 F.(2d) 995, 51 A. L. R. 534. See, also, 26 USCA § 1251, and as amended May 10, 1934 (48 Stat. 757, 26 USCA § 1251 (a).

We are aware that the foregoing construction has not been uniformly placed upon Treasury Decision 3435, but we think it best accords with the language used, and also with the pertinent canons of construction.

It follows that Treasury Decision 3435, relied upon by the taxpayers as the basis of their complaints, has no application to the facts set up.

For the foregoing reasons, we think that the demurrers were rightly sustained.

The judgments are affirmed.