**MERHENGOOD CORPORATION (DEL.) v. HELVERING, Commissioner of Internal Revenue.**

No. 6764.

United States Court of Appeals for the District of Columbia.

Argued Feb. 9, 1937.

Decided March 15, 1937.

Rehearing Denied April 19, 1937.

Paul E. Shorb and M. P. Wormhoudt, both of Washington, D. C., for petitioner.

Robert H. Jackson, Asst. Atty. Gen., and Sewall Key, Morton K. Rothschild, Robert L. Williams, and Herman Oliphant, all of Washington, D. C., for respondent.

Before MARTIN, Chief Justice, and ROBB, GRONER, and STEPHENS, Associate Justices.

GRONER, J.

Petition to review a decision of the Board of Tax Appeals.

Prior to December 31, 1924, Henry Lockhart, Jr., had been interested in the investment banking field and had successfully organized, financed, and developed several corporations. Late in 1924 Blair & Co., Inc., a large banking and investment corporation located in New York City, offered Lockhart an executive position in its organization at a salary of $25,000 annually and as an inducement to his becoming one of its officers and directors offered him the right to acquire 5,000 shares of the common capital stock of Blair & Co. at the book value thereof on December 31, 1924—about $158 a share. (The stock was not actively traded in, but it was customarily traded in at its book value.) In early January, 1925, Lockhart became an officer and director of Blair on a salary basis of $25,000 a year (increased in 1927 and subsequent years to $35,000). There was no obligation on Lockhart under the terms of the offer to purchase the stock. It was an offer running to him which his acceptance converted into a binding option. Nor was the contract of employment for a definite period or applicable to any other officer or employee of Blair & Co. than himself. Lockhart did not exercise the option coincidentally with the commencement of his employment, but some

twelve months later—on December 30th of that year—caused petitioner, Merhengood Corporation, to be organized under the laws of Delaware for the purpose of acquiring the common capital stock of Blair & Co. which under the option he had the right to buy. To this end, as nearly as we can determine from the stipulated facts, he assigned the option to Merhengood Corporation in consideration of the issuance to him by that corporation of its entire capital stock. Merhengood then acquired 6,400 shares of common stock of Blair & Co., Inc., and executed its note to Blair & Co. in the sum of $617,462.27. This transaction is indicated as having been consummated on December 31, 1925.

The statement of Merhengood Corporation in account with Blair & Co. shows how the option covering only 5,000 shares was enlarged to cover 6,400 shares and also the debits and credits as the result of which the purchase price of $617,462.27 was arrived at. It appears that the agreed purchase price of 5,000 shares, at $158.788 per share, as of January 1, 1925, would amount to $793,890, but apparently around September 1st Blair & Co. declared a 20 per cent. stock dividend and an additional right to subscribe to 10 per cent. of new stock at par and also declared a 40 per cent. stock dividend in preferred on common. The result of this to a holder of 5,000 shares of Blair Company stock as of January 1, 1925, would have been the receipt, first, of 1,000 shares of new common stock at no cost; second, of the right to acquire 500 shares of new common stock at par, or $50,000; and, third, of 2,000 shares of preferred stock without cost. The statement indicates, however, that Blair & Co. had prior to the exercise of the option disposed of the 2,000 shares of preferred stock at $111.801 per share which, if Lockhart had exercised the right on January 1st, he would have been entitled to. Blair & Co. had also sold, at $145.8133 per share, 100 shares of the 500 shares of common stock which Lockhart likewise would have been entitled to buy at par had he exercised the option on January 1st. The result of these transactions was to leave in the hands of Blair & Co., available to Lockhart, only 1,400 shares of new common stock. But, in order to treat Lockhart precisely as though he had been the holder of 5,000 shares of Blair & Co. stock as of January 1, 1925, Blair & Co. credited on the 1924 option price the sum of $223,602, the proceeds

of the sale of 2,000 shares of preferred stock, and $14,581.33, the proceeds of the sale of the 100 shares of common stock, and charged Lockhart with $50,000, the cost to him of the 500 shares which, as holder of 5,000 shares, he would have been entitled to subscribe for at par. The result of this was that Merhengood Corporation acquired 6,400 shares of Blair & Co. stock for $617,462.27, or at the rate of $96.48 per share. As of this date, namely December 31, 1925, the market value of Blair & Co. stock was $227.

In 1927 Merhengood sold, for $537,839.-68, 3,948 shares of common stock and some preferred stock acquired in 1927. Merhengood reported in its 1927 return a loss of $37,963.56 on this transaction. Its method of figuring this loss was by taking as cost the market value of the Blair & Co. stock on the day it was purchased—$227 a share —or, in other words, by adding to the price paid, the then value of the option in Lockhart's hands, computed to be the difference between the price paid for the stock and its market value at the time of acquisition.

The Commissioner, on the other hand, determined Merhengood realized a profit of $209,422.25 from the sale of the stock. He arrived at his basis by taking as the cost of the stock the amount actually paid to Blair & Co. for it—which we have said was $96.48 a share—with adjustment for the preferred stock acquired subsequent to the exercise of the option on a basis as to which no question is raised.

Section 203(a) of the Revenue Act of 1926 (44 Stat. 9, 12) provides that upon the sale or exchange of property, the entire amount of the gain or loss shall be recognized except as thereinafter provided. Subdivision (b) (4) of section 203 provides that no gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation. In the instant case Merhengood acquired the option in exchange for all its issued stock, and immediately after the exchange Lockhart, the transferor, owned all the stock of Merhengood. Therefore, the case comes squarely within the provisions of section 203(b) (4) which provides that no gain or loss shall be recognized under such circumstances.

Section 204(a) (8) of the Revenue Act of 1926 (44 Stat. 14, 15) provides that the

basis for determining the gain or loss shall be the cost of the property, except that if the property was acquired after December 31, 1920, by a corporation by the issuance of its stock in connection with a transaction described in paragraph (4) of subdivision (b) of section 203, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of the gain or decreased in the amount of the loss recognized to the transferor from such transfer under the law applicable to the year in which the transfer was made. Inasmuch as the transaction between Merhengood and Lockhart comes under section 203(b) (4), it follows that the cost basis of the option in the hands of Merhengood is the same as it would be in the hands of Lockhart within the meaning of section 204(a) (8).

Therefore, the sole question in this case is: What was the cost basis of the option in the hands of Lockhart?

Merhengood argues that the option to Lockhart was given in part compensation for his services to Blair & Co.; that the original option was effective only as of the 31st of December, 1924; that Lockhart did not exercise this option but that Blair & Co., by reason of his continued employment and services to the company, renewed the option from time to time until, on the date when it was exercised—a year later— it had increased in value to the extent of $835,337.73—that amount being the difference between the market value of the stock and its price under the option. Merhengood says, therefore, that Lockhart realized taxable income during 1925 equal to this difference in value and cost under the option. In other words, that Lockhart's right on December 30, 1925, to buy Blair stock at a lower figure than its value was a right which was taxable income to him whether he saw fit to exercise the right or not. Merhengood relies in this respect largely on Erskine v. Commissioner, 26 B.T.A. 147.

The Commissioner, on the other hand, insists that the option which Lockhart transferred to Merhengood had no value at the time it was acquired by Lockhart, that is to say, twelve months previous to its exercise, and that, since section 204(a) (8) refers to cost basis and not to the value of the property at some other time, the value of the option at the time of transfer cannot be taken to determine the cost basis of the Blair & Co. stock acquired by Merhengood.

The Board affirmed the Commissioner's determination, on the ground that Merhengood would have to use the same basis for the stock that Lockhart would have used—apparently overlooking the fact that Lockhart had only an option and had never acquired the stock. In the view we take of the question, we agree with the Board's conclusion but on a somewhat different ground.

As we have already pointed out, Merhengood argues that on the purchase date the difference between the book value of 6,400 shares of Blair stock and the price paid for them (a difference of some $835,000) represented the cost to it of the option. This contention is based upon the supposition that the option had this cost value in the hands of Lockhart because Lockhart had earned this value in services to Blair & Co.; or, in other words, that it was part of the compensation paid him by Blair & Co.—something he had worked for and acquired during the year 1925. The option, verbal or written, is not set forth in the record. Neither is the contract of employment, and much of the confusion, as we think, has resulted from this omission. The Board leaves in doubt the question whether the option was or was not intended to be additional compensation to Lockhart, but we think there is no proper ground for this doubt, and we find nothing which would justify us in reaching the conclusion that it was anything else than the stipulated facts say it was, viz., an inducement to accept employment. All that is said in the stipulation is that Lockhart was offered and accepted the right to acquire 5,000 shares of Blair stock at book value and that the consideration was his entering Blair's employment at a fixed salary for an indefinite time and that, Lockhart not being in present funds to complete the option, Blair granted extensions of time. In saying this, we are by no means unmindful that Merhengood contends differently and insists that the original option was merged in succeeding options and that, though the first offer was based upon the consideration of Lockhart's accepting employment, the option finally exercised was for a different number of shares at a different price and based on a different consideration, that is, upon Lockhart's continuing his employment. But the contention that there were separate options given throughout the year 1925 is not borne out by the record. Instead, the contention is confuted by subsequent events. And we stop to say, parenthetically, that if

these events do not truly reflect the contract between the parties, the blame is attributable wholly to Merhengood, for it and not the Commissioner was at all times fullhanded with proof of every step in the dealings of the parties. There was ample opportunity to show the facts on which it relies but which it failed to prove, and in the circumstances it is perhaps not too much to assume that a fuller disclosure would have been hurtful rather than helpful. The events, however, to which we refer are these:

Lockhart engaged his services to Blair & Co. at the beginning of 1925 on a salary basis which, so far as appears, was commensurate with the salary received in subsequent years,[1] and he was induced to make this arrangement by the agreement of Blair & Co. to extend to him the right to a substantial interest in the future profits of the company, if there were any, through the right to purchase 5,000 shares of its stock at its then market value. That this option had a sentimental value may, for present purposes, be admitted, but certainly it had no market value. An option to acquire shares of stock at market price is of itself not a thing of value, since in ordinary circumstances the result could be accomplished without such an option. Lockhart, as appears, was not prepared to exercise the option at the time, but it is stipulated the option was from time to time extended and was finally fixed on December 30, 1925, and was exercised by Merhengood, to whom it was assigned. When it was exercised, Blair & Co., as we have shown, treated it as a continuing option dating from its date; in other words, Blair made no new option nor changed its terms. It treated the transaction just as though Lockhart had accepted the option and executed a note without interest as of December 31, 1924. The purchase price per share was the same, the number of shares on which the cost was calculated was the same, and the result was different only because the subsequent accretions were treated as an incident to the ownership of the option. And so in the final statement of account the charges and accretions were balanced, and the result was the acquisition of the stock on a basis of $96.48 a share rather than $158. But in our opinion this diminution in price was not the result of a new or different option. It was—as clearly appears from the statement—the exercise of the option as of its date.

In these circumstances, it is logical and reasonable to conclude that the option which Lockhart acquired was indefinite in time or at least that its extensions were contemplated by the parties as part of the consideration of Lockhart's acceptance of employment. Certainly nothing to the contrary is shown.

In this view we are impelled to hold:

First, that the right to buy the stock was one of the inducements from Blair & Co. to Lockhart to enter into the contract of employment;

Second, that when received by Lockhart the right had no present ascertainable market value and therefore no cost value in his hands; and

Third, that it was without additional consideration extended from time to time, effective as of its date, as appears from the conduct of the parties.

A case much like this is Bothwell v. Commissioner (C.C.A.) 77 F.(2d) 35, affirming 27 B.T.A. 1351. There an oil company was in bad condition, and it was advantageous to it to secure the services of Bothwell, an experienced oil operator. A contract of employment was made, and a part of the arrangement was that Bothwell might acquire at book value a large block of stock of the corporation in order to enable him to share in the fruits of his management. The contract there, as here, provided for the payment of a salary. Bothwell entered into the service, and some four or five years later exercised the option, buying the stock at the stipulated option price which, as we have seen, was book value as of the time the option was given. A year later he sold it at considerable profit, and the question was whether the profit

---

[1] (It is obvious that if the value of the option—$835,000—was additional compensation in 1925, Lockhart received in that year a total compensation grossly disproportionate to the compensation received in the subsequent years of his employment with Blair & Co. And this circumstance seems to indicate a sound distinction between this case and the Erskine Case [even if we adopt the theory of that case]—for there the stock purchase right was spread over the term of the taxpayer's employment, and there was not in any one year the overwhelming excess of compensation which would result here in adopting Merhengood's theory.)

was ordinary income or capital gain. The questions there were like those here, that is to say, whether the option price or the market value, when exercised, was the basis for computing income or gain; also whether the increase in the value of the rights covered in the option should be regarded as additional compensation for services rendered in the five-year period preceding exercise. Practically the only difference in the cases is this: That there was not there the point made by Merhengood that the option exercised was not the original option but an entirely new and different option originating out of an entirely new and different consideration. Counsel for Merhengood say that the difference is that in the Bothwell Case his option had no value until it was exercised, whereas Lockhart's "modified options" clearly had a value as of the different extension dates during 1925.

In the Bothwell Case the Tenth Circuit Appeals Court said they (Bothwell and an associate) were given options to purchase stock in the parent corporation at $2.56 a share, which was the value then placed upon the stock by the directors of that corporation. No conditions attached to the options. They could have exercised them immediately, had they elected to do so. Had they exercised the options without delay, they would have received nothing more than they had paid out, and the future success of the corporation would have increased the value of their stock or capital investment. No doubt—the court said—the options were an inducement to them to agree to enter into the contracts of employment, but they constituted a present consideration and not an agreement to pay for services in the future. Precisely that, we think, is shown here.

In that case it was recognized that stock given to an employee as remuneration for his services is income and taxable at its fair market value at the time it is received, and likewise that where a contract is entered into for the purpose of remunerating an employee for services through the purchase of stock at a reduced price, taxable gain results to the extent of the difference between the cost and market value at the time of delivery (purchase). But under the facts of·this case neither of those rules or principles is applicable. If we could find in

the record support for Merhengood's position that the option it acquired from Lockhart was not the original option he received in consideration of his agreeing to associate himself with Blair·& Co. but was a new and different option obtained at a later date, in consideration of services he was then rendering and as part of his compensation for such services, we should have a different case, for the option would in that event have a present value in Lockhart's hands.

But, as we have seen, such proof as there is indicates clearly that the option had no ascertainable value when first received; and that the option as given remained unchanged until exercised, except that, being recognized as of its original date, it included, when exercised, all the credits and debits which would have attached to Lockhart's ownership if he had acquired the stock coincidentally with receiving the option. We have, therefore, nothing on which to predicate Merhengood's claim that Lockhart earned the increment arising out of the option as compensation for services. Certainly there is nothing to show that Blair & Co. claimed the difference between the option price and market value of the stock on the date of sale as additional compensation to Lockhart during 1925, and Lockhart himself made no such claim, for it is stipulated that he did not return as income or pay the tax upon that amount which Merhengood now insists he received as additional compensation in that year. Lockhart's failure to return it as income not only gives rise to the presumption that he did not treat it as such, but also, if Merhengood's present claim is successful, will result in complete exemption of both from taxation. Conceding, therefore, the legalistic fiction of Merhengood's separate identity, the result would be that Merhengood would avoid taxation by using (on the theory that it was compensation to Lockhart) the precise amount which Lockhart and Blair & Co. apparently did not treat as additional compensation and upon which Lockhart did not pay and cannot now be compelled to pay a tax.

We think the Commissioner's assessment of the tax should be sustained.

Affirmed.